**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) JAMES BOLES, | ) | |
| (2) BARBARA BOLES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-00034-JFH-CDL |
| | ) | |
| (1) CARSHIELD, LLC, | ) | *Removed from the District Court of* |
| (2) NRRM, LLC, | ) | *Oklahoma County, Oklahoma* |
| (3) CONCORDIAN, LLC d/b/a | ) | *Case No. CJ-2021-3014* |
| AMERICAN AUTO SHIELD, | ) | |
| Defendants. | ) | |

<u>**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND REQUEST FOR**</u>
<u>**STAY OF PROCEEDINGS WITH BRIEF IN SUPPORT**</u>

Respectfully submitted,

**DOERNER SAUNDERS DANIEL**
**& ANDERSON, LLP**

Michael Linscott, OBA No. 17266
Brian Keester, OBA No. 33208
Two West Second Street, Suite 700
Tulsa, OK  74103-3117
T: 918.591.5308 | F: 918.925.5308
Email:  mlinscott@dsda.com
          bkeester@dsda.com

-and-

Sara E. Potts, OBA No. 32104
210 Park Avenue, Suite 1200
Oklahoma City, OK 73102
T: 405.319.3500 | F: 405.319.3537
Email: spotts@dsda.com
*Attorneys for Defendants NRRM, LLC, and*
*American Auto Shield, LLC*

September 12, 2022

6122081.1

## TABLE OF CONTENTS

**Page**

**INTRODUCTION** ……………………………………………….....   1

**STATEMENT OF THE CASE** ...........................................…………………   1

**STATEMENT OF UNDISPUTED MATERIAL FACTS**……………………   3

**BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION** ……..   9

**I.    THE ARBITRATION CLAUSE OF THE VSC REQUIRES ALL OF PLAINTIFFS' CLAIMS TO BE SUBMITTED TO ARBITRATION**...….…   9

**A.    A VALID AGREEMENT TO ARBITRATE EXISTS UNDER THE TERMS OF THE VSC**……………………………………………………   11

**1. THE VSC WAS VALIDLY EXECUTED AND ITS TERMS ARE ENFORCEABLE…**………………………………………………….   12

**2. THE VSC'S ARBITRATION PROVISIONS ARE UNAMBIGUOUS AND MANDATORY…**…………………………………………………   14

**B.    THE VSC'S MANDATORY ARBITRATION TERMS ARE NOT UNDERMINED BY PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIM.**………………………………………………………………   15

**C.    THE ARBITRATION CLAUSE APPLIES TO ALL OF PLAINTIFFS' CLAIMS IN THIS LAWSUIT.** ......................................................   16

**1. PLAINTIFF'S CLAIMS AGAINST CARSHIELD ARE SIMILARLY CONTEMPLATED UNDER THE VSC'S ARBITRATION TERMS, AND CARSHIELD CONSENTS TO ARBITRATION.** .................................   18

**II.    DEFENDANTS DID NOT WAIVE THEIR RIGHT TO ABRITRATION AND THIS MOTION IS TIMELY MADE.**…………………….................................................................   20

**CONCLUSION**………………………………………………………   23

# TABLE OF AUTHORITIES

**PAGE(S)**

**STATUTES/ORDINANCES**

9 U.S.C. § 1, *et seq.* ................................................................. 1, 9
9 U.S.C. § 2 ................................................................................. 16
9 U.S.C. § 3 ................................................................................. 16
12 O.S. §§ 1851- 1858 .......................................................... 1, 9, 21
12 O.S. § 1857 ............................................................................. 15
12 O.S. § 1858 ........................................................................ 1, 20

**FEDERAL CASES**

*AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011) ................................................ 10

*AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ............................ 11

*BOSC, Inc. v. Bd. of Cnty. Commissioners of Cnty. of Bernalillo*
   853 F.3d 1165 (10th Cir. 2017) ................................................................. 3, 22

*Chelsea Family Pharmacy v. Medco Health Solutions, Inc.*
   567 F.3d 1191 (10th Cir. 2009) .......................................................... 11, 17, 18

*Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123 (2d Cir. 2001) ..................... 17

*Cummings v. FedEx Ground Packaging Sys., Inc.*
   404 F.3d 1258, 1261 (10th Cir. 2005) .......................................................... 16

*EEC, Inc. v. Baker Hughes Oilfield Operations, Inc.*
   460 F. App'x 731 (10th Cir. 2012) .......................................................... 12, 15

*Elsken v. Network Multi-Family Sec. Corp.*, 49 F.3d 1470 (10th Cir. 1995) ................. 13

*GATX Mgmt. Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159 (D. Colo. 2001) ............. 19

*Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975 (10th Cir. 2014) ............................... 3

*Int'l Asset Mgmt., Inc., v. Holt*, 487 F. Supp. 2d 1274 (N.D. Okla. 2007) ...................... 18

ii

*Lloyd v. Northrop Grumman Sys. Corp.*
  2008 WL 320021(W.D. Okla. Feb. 4, 2008) .................................................. 18

*Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533 (10th Cir. 1987) .......................... 16

*Mid-Continent Cas. Co. v. Gen. Reinsurance Corp.*
  2009 WL 2588867 (N.D. Okla. Aug. 18, 2009) ............................................. 18

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983) ..................... 10

*Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268 (10th Cir. 2010) ................... 20

*O'Connor v. BMW of N. Am., LLC*, 2020 WL 5260416
  (D. Colo. July 23, 2020) ..................................................................... 8

*Oklahoma Gas & Elec. v. Toshiba Int'l Corp.*
  2016 WL 3659941 (W.D. Okla. July 1, 2016) ......................................... 12, 13

*P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861 (10th Cir. 1999) ................................... 18

*Perry v. Thomas*, 482 U.S. 483 (1987) .............................................................. 10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ........................... 16

*Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) ................................................ 10

*Reeves v. Enter. Prod. Partners, LP*, 17 F.4th 1008 (10th Cir. 2021) ....................... 12, 20

*Sanchez v. Nitro-Lift Tech., LLC*, 762 F.3d 1139 (10th Cir. 2014) ...................... 16, 17, 20

*Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720 (7th Cir. 2004) ................................ 8

*Shell Oil Co. v. CO2 Comm., Inc.*, 589 F.3d 1105 (10th Cir. 2009) ................................ 15

*Spahr v. Secco*, 330 F.3d 1266 (10th Cir. 2003) ................................................. 16

iii

*Williams v. Imhoff*, 203 F.3d 758 (10th Cir. 2000).............................................................. 17

**STATE CASES**

*Amundsen v. Wright*, 2010 OK CIV APP 75, 240 P.3d 16 ............................................... 16

*B.A.P., L.L.P. v. Pearman*, 2011 OK CIV APP 30, 250 P.3d 332 ....................... 13, 18, 19

*Carter v. Schuster*, 2009 OK 94, 227 P.3d 149 .................................................................. 19

*City of Muskogee v. Martin*, 1990 OK 70, 796 P.2d 337 .................................................. 11

*Dunbar Eng'g Corp. v. Rhinosystems, Inc.*
  2010 OK CIV APP 49, 232 P.3d 931 ....................................................................... 13, 14

*First Nat. Bank & Tr. Co. of El Reno v. Stinchcomb*
  1987 OK CIV APP 1, 734 P.2d 852 ................................................................................ 12

*Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, 164 P.3d 1028 ............................. 9

*High Sierra Energy, L.P. v. Hull*, 2011 OK CIV APP 77, 259 P.3d 902 .................... 10, 12

*Howell's Well Serv., Inc. v. Focus Grp. Advisors, LLC*
  2021 OK 25, 507 P.3d 623 ........................................................................... 20, 21, 22, 23

*Long v. DeGeer*, 1987 OK 104, 753 P.2d 1327 ................................................................. 19

*McKinzie v. Am. Gen. Fin. Servs., Inc.*, 2012 OK CIV APP 37, 276 P.3d 1082 .............. 14

*Najera v. David Stanley Chevrolet, Inc.*, 2017 OK CIV APP 62, 406 P.3d 592 .............. 11

*Northland Ins. Co. V. Kellogg*, 1995 OK CIV APP 84, 897 P.2d 1161............................ 21

*Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*
  2007 OK 12, 160 P.3d 936 ...................................................................................... 11, 16

*Oklahoma Southern Life Ins. Co. v. Mantz*, 1942 OK 392, 131 P.2d 70 ................... 13, 18

iv

*Rogers v. Dell Computer Corp.*, 2005 OK 51, 138 P.3d 826......................................11, 12

*Rust v. Carriage Servs. of OK, Inc*., 2007 OK CIV APP 125, 173 P.3d 805..............14, 15

*Signature Leasing, LLC v. Buyer's Grp., LLC*, 2020 OK 50, 466 P.3d 544..............15, 16

*Sutton v. David Stanley Chevrolet, Inc.*
  2020 OK 87, 475 P.3d 847 *as corrected* (Oct. 21, 2020)..........................................11, 15

*Thompson v. Bar-S Foods Co*., 2007 OK 75, 174 P.3d 567......................................12, 17

*Voss v. City of Oklahoma City*, 1980 OK 148, 618 P.2d 925...........................................10

*Weaver v. Doe*, 2016 OK CIV APP 30, 371 P.3d 1170 ..............................................10, 17

*Wilco Enterprises, LLC v. Woodruff*
  2010 OK CIV APP 18, 231 P.3d 767 ...........................................................9, 10, 11, 21

## FEDERAL RULES

Fed. R. Civ. P. 12 ............................................................................................................8

6122083

Defendants NRRM, LLC d/b/a CarShield ("CarShield"), and American Auto Shield, LLC ("AAS"), improperly pled as Concordian, LLC d/b/a American Auto Shield,[1] hereby move for an Order compelling the parties to participate in confidential arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.,* and the Oklahoma Uniform Arbitration Act, 12 O.S. §§ 1851- 1858, and further request this Court enter an Order entering a stay of the proceedings, in accordance with 12 O.S. § 1858 (A), (G)-(F). In so moving, Defendants respectfully submit to the Court as follows:

### Statement of the Case

On December 19, 2019, Plaintiffs James and Barbara Boles ("Plaintiffs") purchased a month-to-month Vehicle Service Contract ("VSC") as advertised and sold by Defendant CarShield and as administered by Defendant AAS. Under the terms of the VSC, Plaintiffs agreed to pay a monthly fee in exchange for vehicle repair coverage and benefits, subject to exclusions, for their 2009 Chevrolet Silverado 2500 with VIN ending in -149850 (the "Vehicle"). A true and correct copy of Plaintiffs' complete VSC, Contract No. MRF3013004, which includes the month-to-month service plan terms as well as the payment plan terms, is attached hereto as Exhibit 1. While included with the VSC (and incorporated into its terms), the Individual State Variance Requirements for Oklahoma (the "State Variance") is also separately attached hereto as Exhibit 2, for ease of reference.

In Plaintiffs' Petition, Exhibit 3 hereto (also previously included with the documents collectively submitted by Defendants' prior counsel in the Notice of Removal, Dkts. # 2, 2-1),

---

[1] As noted in other filings, there is no separate entity called "CarShield, LLC"; CarShield is the trade name for Defendant NRRM, LLC.

Page 1

they raise factual allegations relating to CarShield's marketing and their purchase of the VSC, as well AAS's administration of a service repair claim made by Plaintiffs under the VSC. Based on these allegations, Plaintiffs assert claims against all Defendants for 1) Breach of Contract; 2) Fraudulent Inducement; 3) Breach of the Duty of Good Faith and Fair Dealing; 4) violation of the Oklahoma Consumer Protection Act; and 5) Punitive Damages. Plaintiffs seek all available remedies and damages related to these theories of recovery, including "reformation of the policy of insurance",[2] actual and punitive damages each in excess of $75,000.00, and reasonable attorney fees and costs. *See generally* Ex. 3.

Notably, Plaintiffs do not dispute purchasing the VSC or that they invoked the benefits of the VSC and made a service repair claim pursuant to the VSC's terms. *Id.* at ¶¶ 16-22, 27-30. Although Plaintiffs rely on the terms of the VSC, as well as the facts and circumstances leading up to the purchase of the VSC, to support their claims against Defendants, Plaintiffs have nevertheless ignored other VSC terms, including the contractual obligation to submit disputes to mandatory arbitration before pursuing the same claims in court. *Compare* Ex. 3, *with* VSC, § M (p. 13), Ex. 1 hereto; State Variance, Ex. 2. The arbitration terms in Section M – Dispute Resolution, and the Oklahoma State Variance amending and modifying Section M, are applicable to all of Plaintiffs' claims in this case. Thus, the parties should be ordered to arbitration in accordance with the VSC's terms and a stay of these proceedings should be entered pending the outcome of that arbitration.

---

[2] Despite this claim, the VSC states very clearly in several sections that it is *not* a policy for insurance. *See, e.g.*, Declarations Page, Ex. 1 (p. D1) ("This CONTRACT is neither an insurance contract nor a seller's warranty."); State Variance, Ex. 2 ("This is not an Insurance Contract.").

Defendants anticipate that Plaintiffs will attempt to say that this Motion is untimely, and that Defendants have waived their right to compel arbitration by actively participating in litigation. While Plaintiffs rely on the VSC and its terms for several of their claims, it is also anticipated that in response to this Motion, Plaintiffs will also likely challenge the validity and enforceability of the arbitration terms and the VSC itself. In particular, Plaintiffs claim that they were "induce[d] . . . to enter the Service Contract," through alleged misrepresentations about what "mechanical breakdown[s]" were covered by the VSC, Pet., Ex. 3, at ¶ 32, and "[b]ut for the foregoing misrepresentations and concealments, the Plaintiffs would not have entered into the Service Contract." *Id.* at ¶ 35. Irrespective of these arguments, and pursuant to the authorities discussed in greater detail below, the facts clearly demonstrate that Defendants have not waived their right to invoke arbitration through the terms of the valid and enforceable VSC, as agreed upon by Plaintiffs, and all of Plaintiffs' claims belong in mandatory arbitration.

## <u>Statement of Undisputed Material Facts</u>

Because "a motion to compel arbitration sets in motion a summary trial procedure rather than the usual discovery procedures," *BOSC, Inc. v. Bd. of Cnty. Commissioners of Cnty. of Bernalillo*, 853 F.3d 1165, 1176 (10th Cir. 2017), courts recognize that the inquiry required for determining the existence of a valid arbitration agreement is somewhat akin to the one employed for summary judgment. *Id.* As Plaintiffs will likely challenge the existence of the valid arbitration terms of the VSC here, the "district court may [therefore] 'decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration'", *id.* at 1177 (quoting *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014)), and thus, Defendants present the following Undisputed Material Facts

in Support of this Motion to Compel Arbitration:

1.      Plaintiffs purchased a month-to-month VSC from CarShield on or about December 19, 2019, identified as contract number MRF3013004. AAS is the administrator and obligor of this VSC. *See* Ex. 1; *see also* Cover Letter, Ex. 1 (p. WCS05PG); Declarations Page, Ex. 1 (p. D1); *accord*, Pet., Ex. 3, at ¶¶ 16-17.

2.      On or about December 13, 2019, Plaintiff James Boles called CarShield and requested to purchase a VSC for his personal vehicle, a 2009 Chevrolet Silverado 2500 with VIN ending in -149850 (the "Vehicle"), which was titled in Mrs. Boles' name. Carter Aff., Ex. 4 hereto, at ¶¶ _; VSC, Ex. 1. Mr. Boles and CarShield's representatives then had multiple telephone calls on December 13-14, 2019, and on December 17-18, 2019, to discuss Mr. Boles' request to purchase the VSC. Carter Aff., Ex. 4 hereto, at ¶¶ 3-5.

3.      On December 19, 2019, Plaintiff James Boles again called CarShield to finalize the purchase of the VSC. During that call, Mr. Boles provided the authorized agent with details about his personal vehicle and discussed the terms and conditions of the VSC with the CarShield authorized agent, include monthly service fee payment terms. Also on that same call, the CarShield authorized agent advised Mr. Boles that the VSC could be cancelled within the first 30 days after he received the VSC and that the service fee paid would then be fully refundable upon that cancellation. Carter Aff., Ex. 4 hereto, at ¶¶ 3-5; *see also* State Variance, Ex. 2, at ¶ 1 ("You may cancel this contract for any reason at any time. In the event You cancel this Service Contract within the first thirty (30) days after the receipt of this contract and no claim has been authorized or paid, You are entitled to a full refund."). Mr. Boles also then authorized the CarShield authorized agent speaking with him to sign the VSC on his behalf and provided CarShield with

Page 4

his email address to send the executed VSC after the call. Carter Aff., Ex. 4 hereto, at ¶¶ 3-7, 10.

4.     During the December 19 call, Plaintiff James Boles also authorized CarShield to run the first payment for the month-to-month service fee using the credit card he had provided over the phone and authorized the CarShield agent to execute the Payment Plan on his behalf. CarShield subsequently emailed the completed VSC to Plaintiff James Boles at the email address he provided over the phone. Carter Aff., Ex. 4 hereto, at ¶¶ 3-9; *see also* Payment Plan Agreement, VSC, Ex. 1 (p. 22); *cf.* Pet., Ex. 3, at ¶¶ 16-17.

5.     On December 26, 2019, Plaintiff James Boles called CarShield again, advising that he and Plaintiff Barbara Boles were currently reviewing the terms of the VSC agreement that had been sent via email. Carter Aff., Ex. 4 hereto, at ¶¶ 8-9. During that call, Plaintiffs had questions about whether the Vehicle's "door lock motors" were covered under the VSC but did not take issue with any of the VSC's terms. Plaintiffs also did not cancel the VSC for several months thereafter and made a claim under the VSC in September 2020. *Id.* at ¶¶ 8-11; *see also* Pet., Ex. 3, at ¶¶ 18-19 (stating "Plaintiffs timely filed a claim . . . pursuant to the Service Contract.").

6.     The first page of text encourages all VSC holders to "look it over and call with any questions [they] may have." *See* Ex. 1, Cover Letter to VSC (p. WCS05PT). The VSC also provides that the customer may cancel the VSC for any reason at any time. State Variance, Ex. 2. Customers also have thirty (30) days after receipt of the contract to cancel the contract and receive a full and complete refund. *Id*. Customers who chose to keep the VSC, as Plaintiffs did here, are bound by its terms, as is AAS.[3] *See* Exs. 1-2.

---

[3] While not a party to the VSC, Defendant CarShield does not object to this Motion and consents to participate in the arbitration of this lawsuit.

7.     The terms of the VSC include a section for "Dispute Resolution," which states as follows:

---

**M.  DISPUTE RESOLUTION**

Any legal dispute between YOU and ADMINISTRATOR relating to this CONTRACT may be resolved by arbitration.  To begin arbitration, either YOU or WE must make a written demand for arbitration within sixty (60) days of ADMINISTRATOR'S final decision.  The arbitration will take place before a single arbitrator.  It will be administered in keeping with the Conditionally Binding Arbitration Rules ("Rules") of the Better Business Bureau ("BBB") in effect when the Claim is filed.  You may get a copy of the BBB's Rules by contacting the BBB at 3801 E. Florida Avenue, Suite 350, Denver CO 80210, by phoning 303-758-2100, or by visiting www.bbb.org.  You agree that any arbitration proceeding or litigation will only consider YOUR Claims. Claims by, or on behalf of, other individuals will not be arbitrated or litigated in any proceeding that is considering YOUR Claims.  In the event of litigation involving this CONTRACT, venue shall be in the courts of Jefferson County, Colorado.  Please refer to the "Individual State Variance Requirement" at the end of YOUR CONTRACT for any added requirements in YOUR state.

---

*See* VSC, § M (p. 13), Ex. 1. Because Plaintiffs are residents of Oklahoma and purchased their VSC in Oklahoma, the above Dispute Resolution provision is also amended by the VSC's Oklahoma State Variance, Ex. 2, which amends § M of the VSC to require *mandatory* arbitration in advance of bringing suit, stating:

> The Arbitration section is amended to include: While arbitration is mandatory, the outcome of any arbitration shall be non-binding on the parties, and either party shall, following arbitration, have the right to reject the arbitration award and bring suit in a district court.

8.     Following the purchase of the VSC (and well-after the initial 30-day deadline to cancel the purchase), Plaintiffs reported an engine issue to AAS and a formal repair claim was opened under Plaintiffs' VSC on or around September 1, 2020. Pet., Ex. 3, at ¶¶ 16-22, 27-30. After review and investigation of the available diagnostic information and documentation, AAS denied the service repair claim pursuant to Sections D.2 (m) and (p) of the VSC. *See* AAS Letter (Nov. 24, 2020), Ex. 5 hereto; *cf.* Ex. 3, at ¶¶ 16-22, 27-30.

9.      Plaintiffs dispute AAS' denial of claim decision and allege that the failures identified fell within the scope of coverage of the VSC, but Plaintiffs took no actions to abide by Section M of the VSC regarding claim dispute resolution through mandatory arbitration, prior to filing suit on December 10, 2021. *See generally* Pet., Ex. 3.

10.     Further, it is undisputed that Plaintiffs authorized the execution of the VSC, received a copy of the executed VSC, reviewed its terms shortly thereafter, and made a service repair claim pursuant to the VSC's terms several months after receiving and reviewing the executed VSC. *Compare* Pet., Ex. 3, at ¶¶ 16-22, 27-30 *with* Carter Aff., Ex. 4, at ¶¶ 3-11; *see also* Exs. 1-2. Plaintiff not only invoked the benefits of the terms of the VSC but also did not cancel the VSC at any time before his service repair claim was denied. Ex. 3, at ¶¶ 18-19; Ex. 4, at ¶¶ 8-11.

11.     Plaintiffs initiated this lawsuit against Defendants in the District Court of Tulsa County, State of Oklahoma, by filing their Petition captioned as *Boles et al v. CarShield, LLC et al*, CJ-2021-03505 (the "State Court Action").

12.     In their Petition, Plaintiffs' claims are based on alleged actions and/or inactions of Defendants in selling Plaintiffs the VSC and in administrating a vehicle repair claim pursuant to the terms of Plaintiffs' VSC. *See* Dkt. # 1-2, at ¶¶ 3-78. One of Plaintiffs' claims asserts "fraudulent inducement," alleging that "[b]ut for the . . . misrepresentations and concealments," regarding the extent of service repair coverage, "the Plaintiffs would not have entered into the Service Contract." Pet., Ex. 3, at ¶ 35; *see also generally id*. at ¶¶ 31-37.

13.     Upon service of the State Court Action in December 2022, Defendants timely provided a Limited Answer to Plaintiffs' claims for Breach of Contract and Fraudulent Inducement. Defendants also filed a Motion to Dismiss on that same date. Dkt. # 2-1; *see also*

Notice of Pending Motion to Dismiss (Dkt. # 9). Shortly thereafter, within the 30-day time frame prescribed by the federal rules, on January 19, 2022, Defendants timely removed this action, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. *See* Notice of Removal, Dkt. # 2. In accordance with Fed. R. Civ. P. 81, Defendants were then required to "answer or present other defenses or objections" within 7 days of removal, or by June 30, 2022. Fed. R. Civ. P. 81 (c)(2)(C). This Motion is therefore brought in contemplation of Rule 81, without waiver of any further substantive defenses, so as not to waive AAS's right to compel arbitration pursuant to the terms of the VSC.[4] *See* VSC, § M (p. 12), Ex. 1; State Variance, Ex. 2.

14.     No other activity has taken place in this case other than the motion practice related to the removal (Dkts. # 2, 14, 17) and Defendants' motion to dismiss (Dkts. # 2, 9, 16, 18); *see also* Minute Order Regarding Civil Cases (Dkt. # 19) and Defendants have taken no actions in this case that would waive the right to invoke arbitration under the VSC.

15.     Because this lawsuit involves claims and disputes arising out of or related to the VSC, the Arbitration Clause of the VSC controls this dispute, and all claims hereunder. *Compare* Dkt. # 1-2, *with* VSC, § M (p. 12), Ex. 1; State Variance, Ex. 2.

16.     The VSC was signed on Plaintiffs' behalf upon approval, and its terms agreed to by Plaintiffs without subsequent cancellation, further indicating their agreement to be bound by its

---

[4] Although courts have held that it is "well-established that a party does not waive its right to arbitrate merely by filing a motion to dismiss", *O'Connor v. BMW of N. Am., LLC*, 2020 WL 5260416, at *4 (D. Colo. July 23, 2020) (quoting *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)), Defendants hereby expressly state that they do *not* intend to waive any other substantive defenses available to them (either jointly or individually) and respectfully reserve the right to subsequently raise such defenses, whether in arbitration or in another legal forum, including any available jurisdictional defenses and/or substantive Rule 12 defenses.

terms, including the Arbitration Clause set forth in § M of the VSC, and the Amendment under the Oklahoma State Variance. *See* VSC, Declarations Page (p. D1), Ex. 1; State Variance, Ex. 2. Thus, the Court should compel the parties to participate in arbitration of all claims and should further enter a stay of the above-styled lawsuit until arbitration has concluded.

## BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION

## I.    THE ARBITRATION CLAUSE OF THE VSC REQUIRES ALL OF PLAINTIFFS' CLAIMS TO BE SUBMITTED TO ARBITRATION.

While the terms of the VSC do not contain a choice of law provision, interpretation of its terms, including the provisions specifically contemplating compliance with Oklahoma state law, is likely governed by the laws of Oklahoma, as Plaintiffs authorized the execution of the VSC while in Oklahoma. *See generally* Exs. 1-2; Ex. 4, at ¶¶ 3-8; *cf. Harvell v. Goodyear Tire & Rubber Co*., 2006 OK 24, ¶ 14, 164 P.3d 1028, 1033–34 ("[I]n Oklahoma, the established choice of law rule in contract actions known as *lex loci contractus* is that, unless the contract terms provide otherwise, the nature, validity, and interpretation of a contract are governed by the law where the contract was made."). Moreover, although the Arbitration Clause of the VSC does not specify whether the Oklahoma Uniform Arbitration Act ("OUAA"), 12 O.S. § 1851, *et seq*., or the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, apply to these disputes, application of either statute compels the same result, requiring all of Plaintiffs' claims to be decided through arbitration. As such, both federal and Oklahoma law are instructive on the current issues raised in this Motion. Specifically, both Acts (the OUAA and FAA) create a presumption in favor of arbitration "as a shortcut to substantial justice with a minimum of court interference[,]" with all ambiguities viewed in favor of arbitration. *Wilco Enterprises, LLC v. Woodruff*, 2010 OK CIV

APP 18, ¶ 14, 231 P.3d 767, 772; *see also Weaver v. Doe*, 2016 OK CIV APP 30, ¶ 8, 371 P.3d 1170, 1172 (quoting *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)) ("The FAA reflects the fundamental principle that arbitration is a matter of contract . . . [and] thereby places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them according to their terms.").

Additionally, both the OUAA and the FAA promote a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memel Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983); *Perry v. Thomas*, 482 U.S. 483, 490 (1987) (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'. . . .") (citations omitted). While the "principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms," *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citations omitted), the OUAA likewise evinces "a clear legislative intent that any disputes arising from the interpretation or application of such agreements 'shall have an immediate and speedy resolution by required arbitration.'" *Wilco*, 231 P.3d at ¶ 13 (quoting *Voss v. City of Oklahoma City*, 1980 OK 148, ¶ 8, 618 P.2d 925, 928). Like its federal counterpart, the OUAA also provides that written agreements to arbitrate are "valid, enforceable, and irrevocable." 12 O.S. § 1857 (A); *compare id., with* 9 U.S.C. § 2. The Oklahoma Supreme Court has recognized that in situations "where arbitration has been contracted for[,] it constitutes a substantive and mandatory right." *Voss*, 618 P.2d at ¶ 5. Upon motion a court shall order the parties to arbitrate "unless the court can say with positive assurance that the matter is not subject to arbitration." *High Sierra Energy, L.P. v. Hull* ("*High Sierra II*"), 2011 OK CIV APP 77, ¶ 16, 259 P.3d 902, 907

Page 10

(quoting *Chelsea Family Pharmacy v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1197 (10th Cir. 2009)); 12 O.S. § 1858(A); *see also Wilco*, 231 P.3d at ¶ 14 (quoting *City of Muskogee v. Martin*, 1990 OK 70, ¶ 8, 796 P.2d 337, 340) ("Courts 'should resolve in favor of coverage' any doubts concerning the arbitrability of a particular dispute.") (internal citations omitted).

With these standards in mind, compelling parties to arbitration requires analysis of only two issues, under either Act: (1) whether a valid agreement to arbitrate exists; and (2) whether the particular dispute falls within the scope of that agreement. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 647–48 (1986); *accord*, *Najera v. David Stanley Chevrolet, Inc.*, 2017 OK CIV APP 62, ¶ 9, 406 P.3d 592, 595 (quoting *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 22, 160 P.3d 936, 944–45) ("In determining whether the parties have consented to arbitration, the courts will decide whether there is a valid enforceable arbitration agreement, whether the parties are bound by the arbitration agreement, and whether the parties agreed to submit the particular dispute to arbitration."). Once it is determined that the parties have entered into a binding agreement to arbitrate, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech.*, 475 U.S. at 650. As discussed *infra*, both aspects of this inquiry support compelling all of Plaintiffs' claims to arbitration, pursuant to the terms of the VSC.

## A.     A VALID AGREEMENT TO ARBITRATE EXISTS UNDER THE TERMS OF THE VSC.

"Under the proceedings governing applications to compel arbitration, the existence of an agreement to arbitrate is a question of law." *Sutton v. David Stanley Chevrolet, Inc.*, 2020 OK 87, ¶ 8, 475 P.3d 847, 852, *as corrected* (Oct. 21, 2020) (citing *Rogers v. Dell Computer Corp.*, 2005

OK 51, ¶18, 138 P.3d 826). As noted by the Tenth Circuit, "[t]he scope of the arbitration agreement, including the question of who it binds, is a question of state contract law." *Reeves v. Enter. Prod. Partners, LP*, 17 F.4th 1008, 1011–12 (10th Cir. 2021). Further, "Oklahoma law commands that where arbitration has been contracted for it constitutes a substantive and mandatory right", *EEC, Inc. v. Baker Hughes Oilfield Operations, Inc.*, 460 F. App'x 731, 735 (10th Cir. 2012) (unpublished) (quoting *High Sierra II*, 259 P.3d at 907), and "directs that 'arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *Thompson v. Bar-S Foods Co.*, 2007 OK 75, ¶ 9, 174 P.3d 567, 572).

        1.    <u>The VSC was validly executed and its terms are enforceable.</u>

Here, the undisputed facts show that Plaintiff received the complete copy of the VSC, which included the arbitration terms and other conditions "as part of the deal." *Oklahoma Gas & Elec. v. Toshiba Int'l Corp.*, 2016 WL 3659941, at * 5 (W.D. Okla. July 1, 2016); *cf.* Undisputed Material Facts ("UMF"), ¶¶ 1, 6-8, 10, 16, *supra*. The facts further demonstrate that the VSC contained the arbitration terms at issue and that Plaintiffs did, in fact, review the terms of the VSC upon receiving it via email. UMF, ¶¶ 1-8, 10, 16; *cf. First Nat. Bank & Tr. Co. of El Reno v. Stinchcomb*, 1987 OK CIV APP 1, 734 P.2d 852, 854 ("[I]f a party to a contract can read and has the opportunity to read the contract but fails to do so, he cannot escape its liability . . . [and] one as a duty to apprise himself of the contents of a contract."). The VSC terms also provided Plaintiffs with "a reasonable opportunity to reject those terms if [they] chose to", *Oklahoma Gas & Elec.*, 2016 WL 3659941 at * 5, as he could cancel the contract at any time "for any reason." State Variance, Ex. 2; *see also* Ex. 1, at § O (p. 14) (original cancellation terms); UMF ¶¶ 6-7, 10, 16.

Page 12

Plaintiffs did *not* then reject the VSC's terms but "ch[ose] instead to proceed with the performance and [to] accept the benefits of the transaction." *Oklahoma Gas & Elec.*, 2016 WL 3659941, at * 5; *cf.* UMF ¶¶ 1-8, 10, 16; *see also* Exs. 1-2; Ex. 4, at ¶¶ 3-11.

Based on the clear terms of the VSC, the Court should find that Plaintiffs voluntarily submitted to arbitration of any and all claims and disputes arising from or related to the VSC, including all claims Plaintiffs assert in the present action. The Dispute Resolution Provision, under § M of the VSC, in conjunction with the Oklahoma specific state amendment, clearly demonstrates that the parties intended to enter into the Agreement and to abide by the arbitration terms therein. *Compare* Exs. 1-2, with *B.A.P., L.L.P. v. Pearman*, 2011 OK CIV APP 30, ¶ 9, 250 P.3d 332, 336–37 (quoting *Oklahoma Southern Life Ins. Co. v. Mantz*, 1942 OK 392, ¶¶ 11–12, 131 P.2d 70, 72) ("When there is a written agreement, 'the whole of the contract is to be taken together' and 'the intention of the parties is to be ascertained from the writing alone, if possible[.]'") (internal citation marks omitted).

In their Petition, Plaintiffs do not dispute (nor can they) that they agreed to be bound by a valid and enforceable contract, nor do Plaintiffs dispute that the VSC was signed with their authorization; they do not challenge that they authorized payments on the month-to-month plan, or that they invoked the terms of the VSC in making a service repair claim. Further, the undisputed facts show that Plaintiffs reviewed the terms of the VSC upon receiving it by email and did not cancel the contract at any time before submitted their repair claim. *See* UMF ¶¶ 1-8, 10, 16; *compare id.*, *with Elsken v. Network Multi-Family Sec. Corp.*, 49 F.3d 1470, 1474 (10th Cir. 1995) ("Where a party signs a written agreement, in the absence of false representation or fraud, he is bound by it, [even when] ignorant of its contents[.]"); *accord*, *Dunbar Eng'g Corp. v.*

Page 13

*Rhinosystems, Inc.*, 2010 OK CIV APP 49, 232 P.3d 931, 935 n. 9 (observing that neither the OUAA or FAA "require[] arbitration agreements to be signed. Instead, acceptance of an arbitration agreement may be shown by acts, conduct, or acquiescence to the terms of the contract.").

Importantly, Plaintiffs also rely upon the terms of the VSC for their claims against the Defendants, further demonstrating Plaintiffs' acceptance of *all* of the VSC's terms, including the Arbitration Clause, which broadly encompasses "[a]ny legal dispute" between Plaintiffs and AAS "relating to this [Vehicle Service] Contract." VSC, § M, Ex.1; *compare id.*, *with McKinzie v. Am. Gen. Fin. Servs., Inc.*, 2012 OK CIV APP 37, ¶¶ 17-19, 276 P.3d 1082, 1087 (finding that plaintiffs "agreed to the binding arbitration of any issue arising out of related to the . . . Agreement," where arbitration language requiring arbitration of "all claims and disputes" was "boldly displayed" in underlying Agreement and that all of plaintiffs' claims were related to the underlying Agreement); *see also* State Variance, Ex. 2. Because Plaintiffs' claims are contemplated and encompassed within the scope of the Arbitration Clause of the VSC, then, "arbitration should be ordered." *McKinzie*, 276 P.3d at ¶ 18.

2.    The VSC's arbitration provisions are unambiguous and mandatory.

There can also be no dispute that the Arbitration Clause at issue is clear and unambiguous. Under Oklahoma law, "[w]here an arbitration clause has no limiting language, the strong policy in favor of arbitration compels the finding that the unambiguous language of the agreement prevails." *Rust v. Carriage Servs. of OK, Inc.*, 2007 OK CIV APP 125, ¶ 18, 173 P.3d 805, 810. Section M of the VSC provides that "[a]ny legal dispute between [Plaintiffs] and [AAS] relating to this Contract may be resolved by arbitration", and that the "Individual State Variance

Page 14

Requirement" attached to the VSC shall provide "added requirements in [Plaintiffs'] state." *See* Ex. 1. The Oklahoma State Variance, Ex. 2, amends § M of the VSC, and states that "[w]hile arbitration is **mandatory**, the outcome of any arbitration shall be non-binding on the parties[.]" (Emphasis added.) Accordingly, the arbitration terms are unambiguous because "[t]he arbitration clause here applies to any dispute between the parties, and the claims here constitute a dispute between the parties[,]" and thus "[a]ny remaining question of arbitrability must be determined by an arbitrator, as provided by the arbitration clause." *Rust*, 173 P.3d at ¶ 18. The undisputed facts therefore undeniably demonstrate that the arbitration provisions in the VSC "unambiguously reflect the parties' intent that any dispute arising out of or in connection with their Agreement is arbitrable", *EEC, Inc.*, 460 F. App'x at 735 (quoting *Shell Oil Co. v. CO2 Comm., Inc.,* 589 F.3d 1105, 1109 (10th Cir. 2009)) (citation marks omitted), and thus a valid agreement to arbitrate exists that should be enforced by the Court. *See* UMF ¶¶ 1-16.

**B.    THE VSC'S MANDATORY ARBITRATION TERMS ARE NOT UNDERMINED BY PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIM.**

Under the OUAA, "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable *except upon a ground that exists at law or in equity for the revocation of a contract*." *Sutton*, 475 P.3d at ¶ 8 (quoting 12 O.S. § 1857 (A)). Where, as in this case, a party challenges the validity of the underlying contract containing an arbitration provision on the basis of fraudulent inducement, the "determination of fraudulent inducement to the entire contract is [therefore] a question for the arbitrator." *Signature Leasing, LLC v. Buyer's Grp*., LLC, 2020 OK 50, ¶ 19, 466 P.3d 544, 550; *see also id.* (observing that § 1857 (C) of the OUAA "makes

Oklahoma's policy on separability fall in line with the [U.S.] Supreme Court's interpretation of [9 U.S.C. § 2] of the Federal Arbitration Act . . . ."). Accordingly, the fact that Plaintiffs have challenged the validity of the entire contract with their inducement claim does not prevent the Court from ordering mandatory arbitration. *Signature Leasing*, 466 P.3d at ¶ 19; *cf. Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 538 (10th Cir. 1987) (citing 9 U.S.C. § 3); *Spahr v. Secco*, 330 F.3d 1266, 1271–72 (10th Cir. 2003) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967)) ("[T]he Supreme Court [has] held that a fraudulent inducement claim that goes to the entire contract must be resolved by an arbitrator.").

### C.   THE ARBITRATION CLAUSE APPLIES TO ALL OF PLAINTIFFS' CLAIMS IN THIS LAWSUIT.

Tenth Circuit courts apply a three-part test to determine whether an issue falls within the scope of an arbitration clause. *Sanchez v. Nitro-Lift Tech., LLC*, 762 F.3d 1139, 1146 (10th Cir. 2014). The Court first classifies the arbitration provision as "either broad or narrow." *Id.* (quoting *Cummings v. FedEx Ground Packaging Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005)). Next, the Court then determines whether the issue is collateral to the narrow or broad clause. *See id.* If the issue is collateral to a narrow arbitration clause, the collateral matter is generally considered beyond its purview; however, "[w]here the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (emphasis original). This analysis similarly satisfies the standard for determining the scope of arbitration terms under the OUAA. *Cf. Amundsen v. Wright*, 2010 OK CIV APP 75, ¶ 12, 240 P.3d 16, 21–22 (quoting *Oklahoma Oncology*, 160 P.3d at ¶ 22) ("The courts will enforce

arbitration agreements according to the terms of the parties' contract, as 'arbitration is a matter of consent, not coercion.'") (internal quotation and citation marks omitted); *cf. Weaver*, 371 P.3d at ¶ 8 (quoting *Thompson*, 174 P.3d at ¶ 9) ("Arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

As discussed above, the arbitration terms at issue are broad, not narrow, and requires arbitration of "any legal dispute" related to the VSC. *Compare* Exs. 1-2, *with Sanchez*, 762 F.3d at 1147 ("[A]n arbitration clause applying to disputes 'arising under' or 'in connection with' the agreement constitutes a broad arbitration clause"); *cf. Williams v. Imhoff*, 203 F.3d 758, 764-67 (10th Cir. 2000) (broadly construing the phrase "arising out of" to mean "'originating from,' 'growing out of,' or 'flowing from'" and collecting cases); *see also Chelsea Family*, 567 F.3d at 1199 n. 9 (citing *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001) (noting that the term, "'relating to' is broader than "arising out of"" in the context of arbitration provisions). The incorporated Oklahoma State Variance addendum, Ex. 2, clearly states that the Dispute Resolution terms in the VSC's Section M are *amended* by the Variance to include mandatory arbitration terms:

> The Arbitration section is amended to include: While arbitration is mandatory, the outcome of any arbitration shall be non-binding on the parties, and either party shall, following arbitration, have the right to reject the arbitration award and bring suit in a district court.

*See also* Ex. 1, § M (p. 13) (including instructions to "refer to the 'Individual State Variance Requirement' at the end of YOUR CONTRACT for any added requirements in YOUR state."). When read as a whole, these terms require mandatory arbitration, and "clearly explain[] that neither [Plaintiff] nor [AAS] would be able to resort to the courts to resolve certain types of

claims." *Lloyd v. Northrop Grumman Sys. Corp.*, 2008 WL 320021, at *2 (W.D. Okla. Feb. 4, 2008); *see also B.A.P.*, 250 P.3d at ¶ 9 (quoting *Mantz*, 131 P.2d at ¶¶ 11–12) ("When there is a written agreement, 'the whole of the contract is to be taken together' and 'the intention of the parties is to be ascertained from the writing alone, if possible[.]'").

       1.    <u>Plaintiff's claims against CarShield are similarly contemplated under the VSC's arbitration terms, and CarShield consents to arbitration.</u>

Rather than "merely considering the labels attached to each of the causes of action[,]" as part of this examination as to the arbitrability of Plaintiffs' claims against CarShield, the Court must instead "evaluate the factual underpinnings of the complaint . . . and '[i]f the allegations underlying the claims touch matters covered by the parties' arbitration agreement then those claims must be arbitrated, whatever the legal labels attached to them.'" *Chelsea Family,* 567 F.3d at 1197-98 (quoting *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999)) (internal citation marks omitted). The purpose of this inquiry is to "make explicit what has been previously been implicit[,]" as "[f]ocusing on the facts rather than on a choice of legal labels prevents a creative and artful pleader from drafting around an otherwise-applicable arbitration clause." *Id.* at 1198; *see also Mid-Continent Cas. Co. v. Gen. Reinsurance Corp.*, 2009 WL 2588867, at *3 (N.D. Okla. Aug. 18, 2009) (quoting *Int'l Asset Mgmt., Inc., v. Holt*, 487 F. Supp. 2d 1274 (N.D. Okla. 2007)) ("As a general rule, tort claims are covered by 'broad' arbitration provisions, such as those extending to all claims 'arising out of or relating to' the contract, so long as the tort claims 'have their roots in the relationship created by the contract.'"). "Focusing on the facts rather than on a choice of legal labels prevents a creative and artful pleader from drafting around an otherwise-applicable arbitration clause", *Chelsea Family*, 567 F.3d at 1198, and it is

this lens through which the Court should view Plaintiffs' claims against CarShield to determine the applicability of the VSC Arbitration Clause, while "guided by the liberal policy favoring arbitration and the plain meaning of the contract." *Id.* at 1199.

In their Petition, Ex. 3, Plaintiffs challenge how the VSC was advertised and sold by CarShield, and how the VSC coverage, benefits, and exclusions should be interpreted and how they were applied by AAS during the claim process. These issues cannot be determined independently or separately from Plaintiffs' claims against AAS, as all of Plaintiffs' claims and damages are rooted in the relationship created by the VSC and based on a common nucleus of operative facts. Plaintiffs clearly acquiesce to this fact by making no distinction between the individual Defendants (or a trade name of the Defendants) when pleading their claims, thus putting each Defendant's liability for each claim at issue. *GATX Mgmt. Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159, 1163 (D. Colo. 2001).

As previously discussed, "the arbitration agreement provided for arbitration of disputes 'arising out of or relating to' the subject of the agreement and transactions concerning the agreement," and Plaintiff's claims against CarShield "clearly lie[] within the ambit of the arbitration provision." *B.A.P.*, 250 P.3d at ¶ 14 (quoting *Long v. DeGeer*, 1987 OK 104, 753 P.2d 1327); *see also* Pet., Ex. 3, at ¶¶ 16-22, 27-30. While not a signatory to the VSC, CarShield has joined in this Motion and has consented to arbitration, and Oklahoma further recognizes that "a nonsignatory may compel arbitration with a signatory as 'a matter of contract,' when 'the nonsignatory is agreeing to arbitrate.'" *B.A.P.*, 250 P.3d at ¶ 19 (quoting *Carter v. Schuster*, 2009 OK 94, ¶¶ 14, 25, 227 P.3d 149, 156). Because Plaintiffs' claims against CarShield are inextricably entwined with their complaints against AAS and "implicate[] issues of contract

construction or the parties' contractual rights and obligations" relating to the VSC, *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1276 (10th Cir. 2010), Plaintiffs' claims against CarShield therefore "fall within the scope of the arbitration clause" at issue and must also be encompassed within the Court's Order compelling arbitration. *Sanchez*, 762 F.3d at 1148; *see also Reeves*, 17 F.4th at 1013 ("When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.").

## II.    DEFENDANTS DID NOT WAIVE THEIR RIGHT TO ABRITRATION AND THIS MOTION IS TIMELY MADE.

As discussed above, pursuant to the mutually agreed upon contractual terms of the VSC, the parties should be required to arbitrate all of Plaintiffs' claims against all Defendants before Plaintiffs are allowed to proceed in the present action. A stay of the current case proceedings to allow the parties to arbitrate these claims would also be appropriate and timely at this juncture. There are 2 pending motions before the court: 1) Defendants' Motion to Dismiss Count III and IV of Plaintiffs' Petition; and 2) Plaintiffs' Motion to Remand. *See* Dkts. # 9, 14, 16-18. Defendants' Motion to Dismiss (Dkt. # 9) would fall within the scope of the Arbitration Clause of the VSC, and should be arbitrated in confidential, private arbitration, and whether the Court grant or deny Plaintiffs' Motion to Remand will not change Defendants' position that arbitration of Plaintiffs' claims is a mandatory pre-requisite to filing suit.

In considering whether or not a party has waived their right to arbitration, the Oklahoma Supreme Court uses a factor-balancing test, "adhering to similar tests set forth in federal cases", *Howell's Well Serv., Inc. v. Focus Grp. Advisors, LLC*, 2021 OK 25, ¶ 15-21, 507 P.3d 623, 627,

namely:

      1.     Whether a party has taken actions that are inconsistent with a right to arbitrate;

      2.     Whether the issue of arbitration was raised only after there had been significant preparation for litigation;

      3.     Whether the trial date is near or there has been a long delay in raising the issue of contractual arbitration rights;

      4.     Whether the party invoking the arbitration right has filed pleadings in the litigation without seeking a stay of the proceedings;

      5.     Whether the party seeking arbitration has engaged in discovery proceedings that are not available in arbitration or participated in other "important intervening steps"; and

      6.     Whether the opposing party has been prejudiced by the delay.

*See id.* (citing federal cases and finding the federal factor balancing test is "a good test for analyzing waiver of the right to arbitration."); *Wilco*, 231 P.3d at ¶ 16. While Defendants acknowledge that a party can waive arbitration, it is also true that "the party asserting waiver has the burden of proof regarding that issue." *Howell's*, 507 P.3d at ¶ 15 (quoting *Northland Ins. Co. V. Kellogg*, 1995 OK CIV APP 84, ¶ 8, 897 P.2d 1161, 1162, *overruled by statute*); *see also id.* at ¶ 7 (citing Oklahoma's Uniform Arbitration Act, 12 O.S. §§ 1851-1881). However, here the facts demonstrate that Defendants have *not* waived the right to arbitration, regardless that Defendants did not immediately move to compel arbitration upon answering or upon removal and regardless of Plaintiffs' anticipated objections. *See* UMF ¶¶ 10-15.

      Recently developed Oklahoma case law provides further guidance. In *Howell's*, 2021 OK 25, 507 P.3d 623, the Defendants had answered the petition but then the case sat dormant for seventeen months. There was no discovery exchanged or taken by either party, nor were there any

Page 21

deadlines, nor dates set via scheduling order. *Id.* at ¶¶ 3-4, 16-18. When Defendants then moved for arbitration, Plaintiffs objected claiming Defendants had waived the right to arbitrate and the district court agreed, finding that compelling arbitration at that time would be prejudicial to Plaintiffs' interests. *Id.* at ¶16. Reversing the trial court's decision, the Oklahoma Supreme Court found that the Defendants were not required to raise arbitration issues in either their responsive pleadings or their affirmative defenses under the amendments to the OUAA, and that the proper method was by moving to compel arbitration under separate motion. *Id.* at ¶¶ 12-13 (citing *Wilco*, 231 P.3d 767). The Court further observed that during the time prior to moving for arbitration, the Defendants "took no action inconsistent with their arbitration rights", *id.* at ¶ 17, and that "[w]hile it is true [Defendants] could have raised their right to compel arbitration in a more-timely manner," the Plaintiffs had nevertheless failed to meet their burden to "prove this delay caused them any harm." *Id.* at ¶ 19. In so ruling, the Court reversed the prior order denying the motion to compel arbitration. *Id.* at ¶ 22.

Just as in *Howell's*, "the mere passage of time" in this case is insufficient to establish a waiver of Defendants' right to arbitration. 507 P.3d at ¶¶ 17-22. Further, other than filing their required Limited Answer, filing the necessary dispositive motions so as not to waive those defenses, and responding to Plaintiff's Motion for Remand, Defendants took no "voluntary" actions that would be "inconsistent with [their] right to demand arbitration[.]" *Id.* at ¶ 20 (quoting *BOSC*, 853 F.3d at 1175. These facts show that Defendants "have not taken any meaningful steps to encourage the litigation of this case" but instead have only attempted to satisfy their procedural obligations and preserve all available defenses. *Compare* UMF ¶¶ 9-14, *with Howell's*, 507 P.3d. at ¶ 21. Further, this case is not yet at issue, discovery has not commenced, and no discovery or

Page 22

trial deadlines have been established. UMF ¶¶ 13-14; *cf. Howell's*, 507 P.3d at ¶¶ 16-20. There would be no delay to the Court's docket should this case be stayed at this time. When considering all the factors, the "instant matter reflects an even less compelling case for waiver", than many other cases where the waiver argument has been rejected. *Howell's*, 507 P.3d at ¶ 21; *see also id.* at ¶ 20 (citing cases); *accord*, UMF ¶¶ 9-15.

Pursuant to the authorities discussed above, arbitration in this case is appropriate, timely, and Defendants have not waived their contractual right to arbitration. In addition, the Plaintiffs will not suffer from any prejudice caused by any alleged delay in the filing of this motion as there are no deadlines set, nor has significant preparation for litigation occurred.

## CONCLUSION

All of the claims asserted in Plaintiffs' Petition against each Defendant are governed by the mandatory arbitration terms of the VSC. The factual allegations Plaintiffs raised in support of their claims fall well within the broad scope of the arbitration provisions, which are valid, unambiguous, and enforceable. Accordingly, the Court should enter an Order compelling the parties to arbitrate all of Plaintiffs' claims pursuant to the VSC. Additionally, the Court should enter a stay of these proceedings until this Motion is decided by the Court, and further order a stay of all proceedings until arbitration is concluded, as required by 12 O.S. § 1858.

Respectfully submitted,

**DOERNER SAUNDERS DANIEL & ANDERSON, LLP**

*/s/ Sara E. Potts*
Michael Linscott, OBA No. 17266
Brian Keester, OBA No. 33208
Two West Second Street, Suite 700

Tulsa, OK  74103-3117
T: 918.591.5308 | F: 918.925.5308
Email:  mlinscott@dsda.com
           bkeester@dsda.com

-and-

Sara E. Potts, OBA No. 32104
210 Park Avenue, Suite 1200
Oklahoma City, OK 73102
T: 405.319.3500 | F: 405.319.3537
Email: spotts@dsda.com
***Attorneys for Defendants NRRM, LLC, and American Auto Shield, LLC***

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that, on September 12, 2022, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system to the following counsel of record:

Donald Smolen
Laura Hamilton
Lawrence Murphy
Hunter Bailey
Smolen Law Firm


*Sara E. Potts*

6122378.1

Page 24