**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

JAMES BOLES and
BARBARA BOLES,

        Plaintiffs;

v.

CARSHIELD, LLC,
NRRM, LLC,
CONCORDIAN, LLC d/b/a
AMERICAN AUTO SHIELD,

        Defendants.

Case No.: 22-cv-00034-JFH-CDL

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION TO COMPEL ARBITRATION**
**AND REQUEST FOR STAY OF PROCEEDINGS**

Respectfully submitted,

SMOLEN | LAW, PLLC

/s/Laura L. Hamilton
Donald E. Smolen, II, OBA #19944
Laura L. Hamilton, OBA #22619
Hunter K. Bailey, OBA #34219
611 S. Detroit Ave.
Tulsa, OK  74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
laura@smolen.law
hunter@smolen.law
*Attorneys for Plaintiffs*

October 3, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

RELEVANT FACTS. ......................................................................................................... 2

ARGUMENT AND AUTHORITIES. ................................................................................ 3

    I.     ARBITRATION IS BARRED FOR DISPUTES RELATED TO INSURANCE CONTRACTS. ........................................................ 5

    II.    DEFENDANTS FAILED TO TIMELY INITIATE ARBITRATION. .................................................................................... 8

    III.   NO VALID AND ENFORCEABLE ARBITRATION AGREEMENT OR  DELEGATION CLAUSE EXISTS. ................. 10

         a.  Plaintiffs did not agree to arbitrate any issues related to the Service Contract, including delegation of the question of arbitrability. ................................................................................ 10

         b.  Plaintiffs' alleged agreements to arbitrate were fraudulently induced, rendering invalid any arbitration provisions. ................. 14

            i.     Defendants misrepresented the arbitration provisions and the documents themselves. .......................................... 19

         c.  The arbitration provisions are unconscionable and therefore arbitration should not be compelled. ............................................ 20

    IV.  DEFENDANTS WAIVED THEIR RIGHT TO ARBITRATE ...... 21

CONCLUSION. ................................................................................................................ 22

CERTIFICATE OF SERVICE. .......................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Barnes v. Helfenbein*, 1976 OK 33, 548 P.2d 1014 ................................................................. 22

*Bellman v. i3Carbon, LLC*, 563 F. App'x 608 (10th Cir. 2014) ............................................ 4, 12

*Bilbrey v. Cingular Wireless, L.L.C.*, 2007 OK 54, 164 P.3d 131 ........................................ 21

*Bowman v. Presley,* 2009 OK 48, 212 P.3d 1210 ................................................................. 15

*Croslin v. Enerlex, Inc.*, 2013 OK 34, 308 P.3d 1041 .......................................................... 16

*Dumais v. Am. Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002) .................................................. 4

*Equal Employment Opportunity Commission v. Waffle House*, 534 U.S. 279 (2002) .................. 5

*Fedor v. United Healthcare, Inc.*, 976 F.3d 1100 (10th Cir. 2020) ....................................... 13

*Granite Rock Co. v. Int' Bhd. Of Teamsters*, 561 U.S. 287 (2010) ......................................... 8

*Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010) .................. 13

*Hardricks v. Alphera Financial Services and David Stanley Dodge, LLC*, No. 114,240/114,241
    (OK CIV APP March 25, 2016). ...................................................................................... 20

*Harris v. David Stanley Chevrolet, Inc.*, 2012 OK 9, 273 P.3d 877 ........................................ 6

*Hickerson v. Pool Corp.,* 2020 WL 5016938 (D. Colo. Aug. 25, 2020) ............................... 4, 12

*High Sierra Energy, L.P. v. Hull*, 2010 OK CIV APP 96 ....................................................... 5

*Isaac Sutton v. David Stanley Chevrolet, Inc.* 2020 OK 87, 475 P.3d 847 ............................... 17

*Koon*, 371 P.3d 1133 (Okla. Civ. App. 2015) ....................................................................... 15

*KWD River City Invs., L.P. v. Ross Dress for Less, Inc.*, 2012 OK 76, 288 P.3d 929 ................. 5

*McKinney v. Community Health Systems, Inc.*, No. CIV-20-00365-PRW, 2020 WL 7082713
    (W.D. Okla. Dec. 3, 2020) .............................................................................................. 7

*Najera v. David Stanley Chevrolet*, 2017 OK CIV APP 62, 406 P.3d 592 ................................ 5

*Oklahoma Oncology & Hematology P.C.*, 160 P.3d 936 (Okla. 2007) .................................... 5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ................................ 4, 5

*Rent-A-Center, West v. Jackson*, 561 U.S. 63 (2010) ............................................................. 6

*Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775 (10th Cir. 1998) ...................... 4

*Rogers v. Dell Computer Corp.*, 2005 OK 51, 138 P.3d 826 ........................................ 1, 4, 5, 6

*Signature Leasing LLC v. Buyer's Group LLC*, 2020 OK 50, 466 P.3d 544 .............................. 4

*Stoll v. Chong Lor Xiong*, 2010 OK CIV APP 110, 241 P.3d 301 ......................................... 21

*Walker v. BuildDirect.com Technologies, Inc.*, 733 F.3d 1001 (10th Cir. 2013) ......................... 4

**Statutes**

12 O.S. § 1855(D) ............................................................................................................ 7

12 O.S. 2011, § 1851 et seq. ............................................................................................... 5

9 U.S.C. § 4 ..................................................................................................................... 4

McCarran-Ferguson Act., 15 U.S.C. § 1012 ........................................................................ 7

COME NOW the Plaintiffs, James and Barbara Boles, by and through their attorneys of record, SMOLEN | LAW, PLLC, and respectfully request that the Court deny Defendants' Motion to Compel Arbitration and Request for Stay of Proceedings. Alternatively, the Court should set this matter for evidentiary hearing[1] on the issue of whether a valid arbitration agreement exists and, if so, whether it applies to the Plaintiffs' claims.[2]

## **RELEVANT FACTS**[3]

This case involves Plaintiffs' state law claims against the Defendants arising out of a contract for indemnity and repair of Plaintiffs' vehicle. Plaintiffs allege Defendants breached the contract, as well as the duty of good faith and fair dealing owed to Plaintiffs, and bring further state law claims for fraud and for violation of the Oklahoma Consumer Protection Act. *See* Petition, ECF No. 2-1 at 6.

Plaintiffs filed suit against Defendants[4] in Oklahoma State Court, in the District Court in and for Tulsa County, State of Oklahoma, on December 10, 2021, resulting in Tulsa County Case No. CJ-2021-03505 ("Tulsa County Case"). *Id*. Defendants were served with process, and, on January 10, 2022, they filed an Answer, ECF No. 2-1 at 25, and a Motion to Dismiss Plaintiffs

---

[1]     This Court's decision to grant an evidentiary hearing on a motion to compel arbitration is within the Court's discretion; however, "if the existence of an agreement to arbitrate is controverted, then the better procedure is for the district court to conduct an evidentiary hearing before entering an order." *Rogers v. Dell Computer Corp*., 2005 OK 51, ¶ 17, 138 P.3d 826, 830.

[2]     Because there is no "delegation clause" delegating the issue of arbitrability of claims to an arbitrator, arbitrability must be decided by the Court. *See infra* § III.

[3]     See *Verified Affidavit* of James Boles, attached hereto as Ex. 1. For the sake of brevity, Plaintiffs include herein a statement of the facts most pertinent to the issue of arbitration; however, Plaintiffs incorporate by reference facts as alleged in the *Petition* filed in the District Court of Oklahoma County, CJ-2021-3014

[4]     In their Petition, Plaintiffs named CarShield, LLC, NRRM, LLC, and Concordian, LLC d/b/a American Auto Shield as Defendants. Doc. 2-1. In their answer to Plaintiff's Petition, Defendants advised that the proper defendants are NRRM, LLC, d/b/a CarShield and American Auto Shield, LLC. *See* Answer, ECF No. 2-1 at 25. Plaintiff anticipates amending the pleadings to correct any mistake in naming after the Plaintiffs' pending Motion to Remand is decided.

claims for (1) breach of the duty of good faith and fair dealing, and for (2) violation of the OCPA. ECF No. 2-1 at 34. On January 14, 2022, Tulsa County District Court Judge William D. LaFortune set Defendants' motion for hearing on February 15, 2022 at 11:00 a.m. in Courtroom 513. *See* Notice of Hearing, ECF No. 2-1 at 71. *Thereafter*, on January 19, 2022, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 based on diversity of citizenship of the parties. *See* Notice of Removal, ECF No. 2.

Plaintiffs filed their Motion to Remand on February 1, 2022. *See* ECF No. 14. In it, Plaintiffs argue that Defendants had waived their right to removal by submitting to the jurisdiction of the Tulsa County District Court and seeking affirmative relief therein prior to removal. *Id*. at 2. Plaintiffs' Motion to Remand is currently pending. Plaintiffs already have responded to Defendants' Motion to Dismiss by requesting the Court decline to hear the same, in light of the pending Motion to Remand. *See* ECF No. 16.

Plaintiffs allege that Defendants advertised "CarShield" vehicle warranties as indemnifying consumers for costly vehicle repairs. *See* Petition, ECF No. 2-1 p. 2 ¶ 11. Plaintiffs contacted Defendants about purchasing a vehicle warranty and were told that the CarShield extended warranty would cover any mechanical issue to his vehicle, with no questions asked. *Id*. at 3, ¶ 15. Based on these representations, Plaintiffs purchased a CarShield vehicle protection plan a/k/a vehicle service contract ("VSC" or "the Contract"). Prior to and during the process of purchasing the warranty, Plaintiff James Boles communicated by phone with a representative of CarShield, who partially explained the necessary documents to Plaintiff and explained that CarShield would insure Plaintiffs' vehicle against any covered mechanical failure. *See* Affidavit of James Boles, Ex. 1, ¶¶ 5, 9, attached. Despite discussing some parts of the documents with James Boles, such as the Payment Plan Agreement, the CarShield agent never discussed arbitration

or disclosed or explained any arbitration provisions in any of the documents. *Id.* at ¶¶ 10-11. Without Plaintiffs being allowed meaningful review of the documents, the CarShield agent signed the documents on behalf of one or both Plaintiffs. *Id*. at ¶ 16.

In August 2020, during the term of the Contract, Plaintiffs' vehicle broke down and Plaintiffs sought indemnity from Defendants under the VSC. *See* Petition, ECF No. 2-1 at 3, ¶¶ 18-19. Defendants denied Plaintiffs' claim for benefits, contending that there was carbon build up in the engine which was supposedly excluded coverage under the Contract. *Id*. at 4, ¶ 21.

## <u>ARGUMENT AND AUTHORITIES</u>

Under the proceedings governing applications to compel arbitration, the existence of an agreement to arbitrate is a question of law. *Rogers v. Dell Computers*, 2005 OK 51, ¶ 18, 138 P.3d 826, 831. "The party moving to compel arbitration must present 'evidence sufficient to demonstrate the existence of an enforceable agreement.'" *Hickerson v. Pool Corp*., 2020 WL 5016938, at *3 (D. Colo. Aug. 25, 2020) (quoting *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014)). If the moving party presents sufficient evidence, then the burden shifts to the nonmoving party "to raise a genuine dispute of material fact regarding the existence of an agreement." Bellman, 563 F. App'x at 612. "The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp*., 299 F.3d 1216, 1220 (10th Cir. 2002). A claim which attacks the enforceability of an arbitration provision itself, rather than just the existence of the contract in general, may be challenged in court. *Signature Leasing LLC v. Buyer's Group LLC*, 2020 OK 50, ¶3, 466 P.3d 544 (COMBS, J., concurring); *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 403-404 (1967).

Generally state law principles apply to determine the existence of a contract calling for arbitration. *Walker v. BuildDirect.com Technologies, Inc*., 733 F.3d 1001, 1004 (10th Cir. 2013);

*Rogers*, 138 P.3d at 830. The FAA specifically provides that a court may compel arbitration only "upon being satisfied that the making of the agreement or the failure to comply therewith is not at issue." 9 U.S.C. § 4. Thus, the FAA policy in favor of enforcing arbitration clauses does not come into play in determining whether an agreement to arbitrate exists. *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).  Procedurally, "[t]he court must determine whether the parties agreed to submit a particular dispute to arbitration." *KWD River City Invs., L.P. v. Ross Dress for Less, Inc.*, 2012 OK 76, ¶ 3, 288 P.3d 929, 930.

In determining whether "the parties have consented to arbitration, the courts will decide whether there is a valid enforceable arbitration agreement, whether the parties are bound by the arbitration agreement, and whether the parties agreed to submit the particular dispute to arbitration." *Najera v. David Stanley Chevrolet*, 2017 OK CIV APP 62, ¶ 9, 406 P.3d 592 (citing *Oklahoma Oncology*, 160 P.3d at 944-45. *High Sierra Energy, L.P. v. Hull*, 2010 OK CIV APP 96, ¶¶ 9-10, 241 P.3d 1139, cert. denied. Because arbitration is a matter of contract, the intent of the parties governs whether a dispute is arbitrable. *Equal Employment Opportunity Commission v. Waffle House*, 534 U.S. 279, 289.

Even where a valid agreement exists to bind the parties, it must be shown that the arbitration clause applies to the dispute(s) at issue in a particular case and, [i]f this cannot be shown, the Court will not impose arbitration upon the parties. *Harris*, 273 P.3d at 879 (citing *Oklahoma Oncology*, 160 P.3d at 944; *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (holding "arbitration is a matter of consent, not coercion."). Additionally, "[a]rbitration is not a forum to rewrite the contract terms for the benefit of another party." *Oklahoma Oncology*, 160 P.3d at 942.

The Oklahoma version of the Uniform Arbitration Act, 12 O.S. 2011, § 1851 et seq., determines how proceedings on an application to compel arbitration shall be conducted so long as

the Act does not frustrate the purposes underlying the FAA. See *Rogers*, 2005 OK 51, ¶15, 138 P.3d 826. Title 12 O.S. § 1857 (A) provides: "An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable *except upon a ground that exists at law or in equity for the revocation of a contract*." (emphasis added). According to the Supreme Court: "Like other contracts, however, [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Center*, 561 U.S. at 68.

"The trial court's decision to grant an evidentiary hearing on a motion to compel arbitration is within the discretion of the trial court." *Harris v. David Stanley Chevrolet, Inc.*, 2012 OK 9, ¶ 5, 273 P.3d 877. In *Rogers v. Dell Computer Corp.*, the Oklahoma Supreme Court stated with regard to a request for a hearing on a motion to arbitrate: "Either party may request a hearing. The decision to grant a hearing will be in the discretion of the district court. However, if the existence of an agreement to arbitrate is controverted, then the better procedure is for the district court to conduct an evidentiary hearing before entering an order." *Id*. at 878 (quoting 2005 OK 51, ¶ 17, 138 P.3d 826, 830). The trial court's ruling thereon will not be disturbed on appeal absent an abuse of discretion. *Harris*, 273 P.3d at 878 (citing *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc*., 2007 OK 12, ¶ 19, 160 P.3d 936, 944).

## I.   ARBITRATION IS BARRED FOR DISPUTES RELATED TO INSURANCE CONTRACTS.

Because the Service Contract in issue is an insurance contract[5], it falls under the recent holding in *Sparks v. Old Republic Home Protection Company, Inc*., where the Court held that a home warranty plan met the definition of insurance under Oklahoma jurisprudence and, as

---

[5]      *See Plfs.' Response to Defs.' Notice of Pending Mot. Dismiss*, pp. 3-8, Prop. II, ECF No. 16, incorporated herein by reference.

such, was exempt from the Oklahoma Uniform Arbitration Act. 2020 OK 42, ¶ 35, 467 P.3d 680, 691. *Sparks* further held that Title 12 § 1855[6] is a state law enacted for the purpose of regulating insurance and thus, the [Federal] McCarran-Ferguson Act applies, which precludes the Federal Arbitration Act (FAA) from preempting conflicting state law. *Id*. Likewise, in the present case, any arbitration provision is unenforceable for claims related to the Service Contract.

Like the Defendants in *Sparks*, Defendants argue that the Service Contract's arbitration language, in conjunction with the FAA, mandates arbitration; however, under 12 O.S. § 1855(D), the arbitration provisions are unenforceable as it relates to the Service Contract in issue. The Oklahoma statute controls over the FAA by operation of the McCarran-Ferguson Act. 15 U.S.C. § 1012. The McCarran-Ferguson Act was enacted to ensure the continuing primacy of the states in regulating and taxing the "business of insurance." See *McKinney v. Community Health Systems, Inc*., No. CIV-20-00365-PRW, 2020 WL 7082713 *3 (W.D. Okla. Dec. 3, 2020). To accomplish this objective, the McCarran-Ferguson Act provides, in relevant part, that "[n]o act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance...." *Id*. "In effect, the McCarran-Ferguson Act[7] creates a reverse preemption in favor of state law when regulating and taxing the 'business of insurance.'" *Id*. *9.

In *Sparks*, Plaintiffs sued their home warranty company for breach of contract and bad faith breach of their home warranty policy, which included coverage for the repair or

---

[6]     12 O.S. § 1855(D): "The Uniform Arbitration Act shall not apply to collective bargaining agreements ***and contracts which reference insurance***, except for those contracts between insurance companies." (emphasis added).

[7]     The McCarran-Ferguson Act specifically states that "no Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance." 15 U.S.C. § 1012.

replacement cost of the home air conditioning system during the stated policy term. 467 P.3d at 681-682. Procedurally, the Defendant in *Sparks* filed a motion to compel arbitration of the underlying dispute pursuant to a contractual provision requiring resolution of disputes through binding arbitration governed by the FAA. *Id*. Plaintiffs argued that mandatory arbitration provisions are prohibited by 12 O.S. 2011 § 1855(D) in any contract that references insurance and the matter should proceed in district court. *Id*. The district court denied the defendant's motion to compel arbitration; Defendant appealed from this interlocutory order and the Court of Civil Appeals affirmed the District Court's Order. *Id*. Certiorari was granted to address questions of first impression. The Oklahoma Supreme Court wrote:

> We granted certiorari to address the first impression questions of: (1) whether a home warranty plan meets the definition of an insurance contract, (2) and if it is insurance, whether a forced arbitration clause in such a contract is unenforceable under the Oklahoma Uniform Arbitration Act, (3) whether 12 O.S. 2011 § 1855 of the Oklahoma Uniform Arbitration Act is a state law enacted for the purpose of regulating insurance under the McCarran-Ferguson Act, 15 U.S.C. § 1012 (b), and (4) whether pursuant to the McCarran-Ferguson Act, does § 1855 preempt the application of the Federal Arbitration Act, 9 U.S.C. §§ 1-307? **We answer all questions in the affirmative.**

*Id*. at 682 (emphasis added). The home warranty company drafted the contract which, like in the present case, included a provision that disputes between the parties would be resolved by arbitration. *Id*. The *Sparks* Court discussed the history of both the FAA and the McCarran-Ferguson Act, noting that the U.S. Supreme Court has yet to address the specific interplay between the two Federal Acts. *Id*. at 686.

> However, the high court has made clear that the FAA policy in favor of arbitration may not be asserted to resolve a foundational challenge to the validity of an arbitration agreement. The Court explained that the presumption of favoring arbitration is applied only where it reflects, and derives its legitimacy from a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and (absent a provision clearly and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass that dispute.

*Id.* at 687-688 (citing *Granite Rock Co. v. Int' Bhd. Of Teamsters*, 561 U.S. 287 (2010)). After concluding the home warranty contract at issue was, in fact, an insurance contract[8], the *Sparks* Court held that arbitration could not be compelled and, in fact, the arbitration provision was contrary to law. In the present case, because the Service Contract is an insurance contract, there is no legally enforceable arbitration provision and, therefore, there can be no presumption in favor of arbitration. Arbitration of the Service Contract cannot be compelled under the FAA or under State law; accordingly, Defendants' Motion should be overruled.

## II.  DEFENDANTS FAILED TO TIMELY INITIATE ARBITRATION.

As fully discussed *infra* in Proposition III, no valid and enforceable arbitration provision exists. Even if it did, Defendants failed to demand arbitration in writing withing sixty (60) days of the denial of Plaintiff's claim, in contravention of the requirement for initiating arbitration under the contract. Defendants argue that "Plaintiffs took no actions to abide by Section M of the VSC regarding claim dispute resolution through mandatory arbitration, prior to filing suit on December 10, 2021." Defs. Mot. ¶ 9. First, arbitration is not mandatory under the Service Contract. Even if it were, Defendants were equally bound to initiate arbitration, and failed to do so.

Under Section M, entitled "Dispute Resolution," the first sentence reads "Any legal dispute between YOU and ADMINISTRATOR relating to this CONTRACT may be resolved by arbitration. To begin arbitration, either YOU or WE must make a written demand for arbitration within sixty (60) days of ADMINISTRATOR'S final decision." Defs.' Mot. at Ex. 1, p. 13, § M, ECF No. 25-1 (emphasis in original). Under the "Definitions" section of the contract,

---

[8]     In its analysis, the *Sparks* Court relied heavily on its analysis in *McMullan v. Enterprise Financial Group, Inc.*, wherein the Court determined that a "vehicle service contract" met the definition of an insurance contract, since the "obvious purpose of a vehicle service contract is to protect the purchaser from the expenses associated with an unexpected mechanical breakdown or an expensive but necessary repair." *Id*. at 689-90 (quoting 2011 OK 7, ¶ 13, 247 P.3d 1173, 1178.).

"Administrator" means "American Auto Shield, LLC." *Id*. at p. 1, § A. The undisputed facts herein demonstrate that this was never done by either party and, consequently, the time frame for electing arbitration has long expired.

It is undisputed that Mr. Boles submitted Claim No. 1049764 on the Service Contract on September 1, 2020. *See* Affidavit of Michael Carter, General Counsel for CarShield, ¶ 11, ECF No. 25-4. It is also undisputed that said claim was denied, in writing, by American Auto Shield ("AAS") in November 2020. *See* Letter of Denial dated Nov. 24, 2020, pp. 1-2, ECF No. 25-5. While pages one and two of the Letter of Denial list dates of November 24, 2020 and November 11, 2020, respectively, it is clear from Defendants' own filings that Claim 1049764 was denied by the Administrator, AAS, in November of 2020. Defendants have provided no indication that either party made any demand for arbitration within the sixty (60) day window <u>expressly mandated</u> by § M ("To begin arbitration, either YOU or WE *must* make a written demand . . ." *Id*. (emphasis added)). In fact, Defendants did not elect to pursue arbitration until the filing of the instant motion on September 12, 2022, more than **TWO YEARS** after denying Plaintiffs' claim in writing.

Furthermore, even if the "Individual State Variance" (ISV) paragraph is properly incorporated to amend § M, it does not modify the permissive language of § M. The ISV paragraph reads "The Arbitration section is amended to include: While arbitration is mandatory, the outcome of any arbitration shall be non-binding on the parties, and either party shall, following arbitration, have the right to reject the arbitration award and bring suit in a district court." Defs.' Mot. at Ex. 1, ECF No. 25-1. This language, buried at the very bottom of a page tacked onto the end of the Service Contract, underneath an unrelated, numbered list, and hidden beneath a paragraph containing emboldened language that has nothing to do with arbitration or dispute resolution, does not replace the language of § M; at best, it may be added to the language of § M. Reading both § M and the ISV language together, this language should be interpreted harmoniously to mandate

arbitration *if* either party in fact initiates arbitration, in writing, within sixty (60) days of written denial of a claim. Because neither party did so, the ISV paragraph does not apply. To read the ISV language any other way would place it in direct conflict with the permissive language of § M, and the Service Contract's arbitration clause would be entirely indiscernible with these provisions directly at odds.

Because neither party timely made a written demand for arbitration under the requirements of § M, the sixty (60) day window to begin arbitration closed no later than January 24, 2021. As such, arbitration was never initiated, and Defendants cannot force arbitration now.

## III.   NO VALID AND ENFORCEABLE ARBITRATION AGREEMENT OR DELEGATION CLAUSE EXISTS.

Even if arbitration of issues related to the Service Contract *could* legally be compelled, and even if Plaintiffs had not been fraudulently induced into signing the contract, Defendants' motion should be overruled because a valid and enforceable arbitration provision does not exist. First, Plaintiffs did not agree to arbitrate issues related to the Service Contract and did not agree to delegate jurisdiction on the issue of arbitrability of its claims to an arbitrator.[9] Next, Plaintiffs' alleged agreements were fraudulently induced by one or more agents of Defendants. Third, the arbitration language in the contract is unconscionable.

### a.   Plaintiffs did not agree to arbitrate any issues related to the Service Contract, including delegation of the question of arbitrability.

Even if the Plaintiffs could be compelled to submit to arbitration regarding claims related to an insurance contract, the Court should not do so because the Plaintiffs did not agree to arbitrate

---

[9]      Quoting the Supreme Court in *First Options of Chicago, Inc. v. Kaplan*: "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so. In this manner, the law treats silence or ambiguity about the question 'who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question 'whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement'—for in respect to this latter question the law reverses the presumption. 514 U.S. 938, 944-45 (1995) (citations omitted) (emphasis added).

issues related to the Service Contract, nor did they agree to give up their right to litigate issues related to the Service Contract. "The party moving to compel arbitration must present 'evidence sufficient to demonstrate the existence of an enforceable agreement.'" *Hickerson v. Pool Corp.,* 2020 WL 5016938, at *3 (D. Colo. Aug. 25, 2020) (quoting *Bellman v. i3Carbon*, LLC, 563 F. App'x 608, 612 (10th Cir. 2014)). The Service Contract contains vague, misleading, and conflicting arbitration language purporting to bind the Plaintiffs, to which the Plaintiffs did not agree. As such, this Court should overrule Defendants' Motion to Compel Arbitration.

**First, neither Plaintiff signed the Service Contract or any arbitration provision(s) thereon**. *See* Defs.' Mot. at Ex. 1, ECF No. 25-1. Rather, the only signatures appear on the "Payment Plan Agreement" and belong to agents of AAS and an agent of "Carshield" on December 19, 2019. *See* Ex. 2 p. 001, attached. The "important disclosures" referenced on Page 1 include payment terms, recurring payment authorization, and additional terms and conditions. *Id*. at pp. 2-6. With no signatures evidencing the Plaintiffs' understanding of and agreement with the terms of the Service Contract, the terms thereof, including those related to arbitration, should not be enforced. Defendants claim that CarShield's records, "including payment and call records," establish that Mr. Boles communicated with CarShield's authorized agent(s) regarding Service Contract Terms and that "Mr. Boles authorized the CarShield authorized agent speaking with him to sign the VSC on his behalf . . ." Defs.' Mot. at Ex. 4, ¶ 5. Plaintiffs deny they agreed to arbitrate the claims later brought against Defendants; they further deny any intent to agree to delegate the issue of arbitrability of their claims to an arbitrator, rather than this Court. *See* Ex. 1. Whether, and in what form the Plaintiffs agreed to any or all of the Service Contract terms is a question of fact that should only be determined after Plaintiffs have the opportunity to conduct limited discovery and an evidentiary hearing is held on the Defendants' instant Motion.

Next, the Service Contract's arbitration provision does not delegate the question of

arbitrability of claims to an arbitrator. Therefore, whether the underlying claims in the Petition must be submitted to arbitration is a gateway question that must be decided by this Court. "While courts typically resolve 'arbitrability' issues such as the validity, scope, or enforcement of an arbitration contract, *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 298, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010), delegation clauses within arbitration contracts can commit the determination of such issues to an arbitrator." *Fedor v. United Healthcare, Inc*., 976 F.3d 1100, 1105 (10th Cir. 2020) (citing *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 68–69). Neither § M, nor the ISV Language contain a delegation provision; therefore, it is up to this Court to decide whether the underlying claims are arbitrable.

Even more confounding, Page 3 of the Payment Plan Agreement refers to *yet another* arbitration provision, separate from the arbitration language in the Service Contract, and much more lengthy.[10] Ex. 2 pp. 003, 006. On Page 3, just above the signatures of the Defendants' agents, is the following language: "**YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT, INCLUDING THE ARBITRATION PROVISION BELOW, AND YOU AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT**." *Id*. at 003 (emphasis in original). Conversely, the arbitration language urged by Defendants is found in the Service Agreement to which the Payment Plan Agreement was presumably attached. Nevertheless, the Payment Plan Agreement refers to an arbitration provision "below." *Id*. The "below" arbitration provision, which is buried at the bottom of a litany of unrelated "Terms and Conditions," begins at the very bottom of one page and spans nearly the entire following page. *Id*. at pp. 005-006. It is

---

[10]     Defendants' Motion does not reference this additional arbitration language. As such, it is unclear whether Defendants consider the Service Agreement and the Payment Plan Agreement two separate contracts, or whether one is incorporated into the other. If they are two separate contracts, the current lack of evidence of Plaintiffs' agreement to the terms of the Service Contract becomes even more crucial, as the only signatures (albeit those of Defendants' agents) appear on the Payment Plan Agreement.

not referenced in the Service Contract itself and contains no place for signatures. *Id*. This arbitration section, lengthy and imposing financial risk on a party electing to initiate arbitration, conflicts both with § M and the ISV language. Not only is this additional arbitration section unconscionable (*see infra* at § c), but its terms hopelessly conflict with the arbitration language urged by Defendants in their Motion to Compel Arbitration.

Moreover, unlike the arbitration language in the Service Agreement, this provision *mandates* arbitration. *Id*. at p. 006 ("shall . . . be resolved by neutral, binding arbitration and not by a court action."). Furthermore, there is no limited window to initiate arbitration, in conflict with the Service Agreement's arbitration language. *Id*. Next, it contains a mandatory "class action waiver" never mentioned in the Service Agreement. *Id*. It is very broad, not only encompassing disputes between Plaintiffs and the Administrator of the Service Agreement, but essentially covers any dispute between Plaintiffs and *anyone*, including non-signing third parties, "which arises out of or relates in any manner to this Agreement or any resulting relationship." *Id*. It also burdens the Plaintiffs with financial responsibilities, related to arbitration, that they did not agree to:

> If you demand arbitration first, you will pay the filing fee if the chosen arbitration organization requires it. We will advance and/or pay any other fees and costs required by the rules of the chosen arbitration organization. The arbitrator's award shall be final and binding on all parties. There shall be a limited right to appeal to the extent allowed by the Federal Arbitration Act. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous.

*Id*. Finally, this provision specifies that arbitration is "final and binding," in direct conflict with the permissive language in the Service Agreement. *Id*. Defendants apparently do not seek to enforce the arbitration language found in the Payment Plan Agreement, since they do not acknowledge it in their Motion. This raises a material question related to the existence of one contract, or two separate contracts. If the latter, whether there is evidence that Plaintiffs agreed to any of the Service Contract terms is material to the question of whether a valid and enforceable

arbitration provision exists. Furthermore, the existence of this additional and conflicting arbitration language, in clear conflict with the arbitration language in the Service Agreement, further illustrates the lack of evidence of Plaintiffs' express agreement to arbitrate on any terms.

### b. Plaintiffs' alleged agreements to arbitrate were fraudulently induced, rendering invalid any arbitration provisions.

Courts have repeatedly invalidated arbitration clauses whereby a party's signature was obtained by fraud. The elements of actionable fraud are: (1) a material misrepresentation; (2) known to be false at the time made; (3) made with specific intent that a party would rely on it; and (4) reliance and resulting damage. *Bowman v. Presley,* 2009 OK 48, ¶ 13, 212 P.3d 1210, 1218. Fraud is divided into actual fraud and constructive fraud. *Koon*, 371 P.3d at 1137 (citing *Patel v. OMH Med. Ctr., Inc.,* 1999 OK 33, ¶ 34, 987 P.2d 1185,1199 (citations omitted)).

Actual fraud requires the intentional misrepresentation or concealment of a material fact which substantially affects another person. *Id*. at 1138 (citing *Faulkenberry v. Kansas City Southern Railway Co.,* 1979 OK 142, ¶ 4, 602 P.2d 203, 206.). Constructive fraud is a breach of either a legal or equitable duty that does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose. *Id.* It may be defined as any breach of a duty which, regardless of the actor's intent, gains an advantage for the actor by misleading another to his prejudice. *Id*. (citing *Patel,* at ¶ 34, 987 P.2d at 1199.). Where a party has a duty to speak, but remains silent, there may be constructive fraud. *Id*. (citing *Evers v. FSF Overlake Assocs.,* 2003 OK 53, ¶ 16 fn. 3, 77 P.3d 581, 587 fn. 3.). "Where the peculiar circumstances give rise to a duty on the part of one of the parties to a contract to disclose material facts and the party remains silent to his or her benefit and to the other party's detriment, the failure to speak constitutes fraud." *Croslin v. Enerlex, Inc*., 2013 OK 34, ¶17, 308 P.3d 1041. Where there is no fiduciary relationship a legal or equitable duty to

disclose all material facts may arise out of the situation of the parties, the nature of the subject matter of the contract, or the particular circumstances surrounding the transaction. *Id*.

In *Koon*, in order to purchase a vehicle, Koon executed a Purchase Agreement, a Retail Installment Sales Contract (RISC), and an arbitration agreement as well as financing with Defendant Key. 371 P.3d at 1135. The arbitration agreement provided "This Arbitration Agreement significantly affects your rights in any dispute with us. Please read this Arbitration Agreement carefully before you sign it." *Id*. Plaintiff contended, *inter alia,* that Defendant Key's agent falsely explained the Arbitration Agreement to him, stating it awarded an attorney's fee to Key if Koon defaulted on payments and litigation was necessary. *Id*. at 1136. In addition, Koon asserted that neither the Purchase Agreement nor RISC contained an arbitration agreement. *Id*. The Retail Sales Installment Contract did contain an acknowledgement providing: "If checked, I acknowledge that you and I have signed a separate arbitration agreement. That agreement is hereby attached and the terms are incorporated into the terms of this contract." *Id*. Noting the box was not checked, the Plaintiff argued lack of assent to arbitration. *Id*.

At the trial level, an evidentiary hearing was held on the limited issue of whether Key's agent conveyed a false impression to the Plaintiff with respect to the arbitration agreement. *Id*. Plaintiff testified that Key's agent had explained to him that if [Koon] took legal action and lost or Key was required to undertake legal action, Plaintiff would be responsible for Defendant's attorney fee. *Id*. Plaintiff further testified that the agent never mentioned it was an arbitration agreement or that the document limited his rights to court. *Id*. The trial court then granted Key's motion for directed verdict, finding Key's agent did not convey a false impression regarding the arbitration agreement and, therefore, the arbitration agreement was not fraudulently induced. *Id*. The Plaintiff appealed.

The Court of Civil Appeals noted that the evidence at the trial level was Koon's assertion that Key's agent affirmatively represented the following about the document he was signing: 1) if they had to sue, Koon would be responsible for [Key's] attorney's fee and all costs of their attorney; 2) that "if I took legal action against them and lost, I'd have to pay their attorneys['] fees;" 3) after Koon hesitated in signing the document, Key's agent told him he had to sign the document if he wanted to buy the car; and 4) that Key's agent never told him that the arbitration agreement meant he was giving up his rights to court. *Id*. at 1138. The Court reversed the trial court's granting of a directed verdict. *Id*. The Court reasoned that, because the agent had chosen to speak regarding a material fact (the arbitration agreement), a duty to speak then arose which required the agent to fully and accurately explain the arbitration agreement.[11] *Id*. (citing *Deardorf v. Rosenbusch*, 1949 OK 117, ¶ 8, 206 P.2d 996, 998 ("the speaker being under a duty to say nothing or to tell the whole truth.")).

Recently, the Oklahoma Supreme Court affirmed a trial court's ruling denying a motion to compel arbitration *Isaac Sutton v. David Stanley Chevrolet, Inc.* 2020 OK 87, ¶ 24, 475 P.3d 847, 859. In its Opinion vacating a contrary ruling by the Court of Civil Appeals, the Court found that the trial court's order had full support in the evidence. *Id*. at 849. That dispute was based on a Dispute Resolution Clause ("DRC") providing for arbitration and located in the two-page Purchase Agreement. *Id*. at 850. Sutton argued that his alleged agreement to the provisions of the DRC was fraudulently induced and the DRC's provisions were unconscionable. *Id*. Defendant moved to

---

[11]     The Court noted: "Although there is no evidence Koon is illiterate, that he was prevented from reading the document, or that the agent's statements were necessarily untrue, 'one conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud . . . since concealment is in effect a false representation that what is disclosed is the whole truth." *Id*. (quoting *Uptegraft v. Dome Pet. Corp*., 1988 OK 129, ¶ 10, 764 P.2d 1350, 1353.).

compel arbitration, and Plaintiffs filed a motion for evidentiary hearing on the issue. *Id*. It was uncontroverted that Sutton had signed the Purchase Agreement in all four sections. *Id*.

The *Sutton* Court focused both on the Purchase Agreement itself and the facts and circumstances surrounding Sutton's alleged agreement to arbitrate. The Court noted that, while immediately beneath the other three sections of the Purchase Agreement there was a signature line to evidence assent to the section, beneath a section entitled "Trade-In Vehicle," no immediate signature line appeared; rather, a "Dispute Resolution Clause" ("DRC") appeared in red-colored font. *Id*. Beneath the DRC (which appeared immediately beneath the "Trade-In Section"), appeared Sutton's signature. *Id*.

Sutton's testimony at the trial level was:

> [T]he DSC finance manager showed him the purchase agreement and said that this document was for verifying his personal information, the vehicle information on both vehicles, and how much he would be paying. The finance manager went over Sutton's personal information, the vehicle information and pointed out the trade-in value as well as the rebate. The finance manager would hold the various documents in one hand and with the other he showed Sutton where he needed to sign. He would then take away the documents. At no time was the DRC discussed. On cross-examination Sutton was asked whether he read the DRC at the time he executed the purchase agreement. He replied he had not due to various reasons that will be discussed later in this opinion.

*Id*. The DRC in *Sutton* provided that all matters under the DRC shall be submitted to binding arbitration pursuant to the FAA. *Id*. It also provided for the arbitrator's fee to be divided equally between the parties to arbitration. *Id*. It further provided that, in the event Defendant must hire legal counsel to enforce or defend its legal rights under the DRC, Sutton would be obligated to pay Defendant's attorney fees and costs, if Defendant was successful. *Id*. On direct examination, Sutton testified his family is on a tight budget and he would not have the money to pay any arbitration fees; if he was required to pay such fees he would have to find a new home. *Id*.

The Court noted first that, because the Suttons had specifically challenged the enforceability of the arbitration agreement contained in the purchase agreement's DRC based upon grounds that exist at law or in equity for the revocation of a contract, i.e., fraudulent inducement, the matter had correctly gone before the district court. *Id*. at 852. After a robust review of the law of constructive fraud, the *Sutton* Court determined, under the theory of constructive fraud, that the trial court's order overruling DSC's motion based on oral findings of fraudulent inducement should be affirmed. *Id*. at 858-859. The *Sutton* Court held that the finance manager who was the Defendant's agent, looking at all of the circumstances surrounding the transaction and representations made, had created a false impression concerning the DRC and was then under a duty to disclose such material information as the arbitration agreement to Sutton. *Id*. at 858. The Court further found it immaterial that Sutton had failed to read the finely printed DRC, in light of the finance manager's duty. *Id*.[12]  The *Sutton* Court also concluded that Sutton had relied upon the false impressions made and the failure to disclose the DRC when he signed, and that he was prejudiced to the advantage of DSC. *Id*.[13]

The Court of Civil Appeals recently affirmed, in an unpublished opinion, a trial court's denial of a motion to compel arbitration filed by David Stanley Dodge, LLC in a similar case.[14]

---

[12]     The Court goes on to quote the Syllabus in *Dusbabek v. Bowers*: "Where a party seeks to enforce an instrument against the person who signed it, and the signer charges such person with fraud in inducing him to sign said instrument on account of false and fraudulent representations concerning the contents of such instrument, and where the person signing such instrument acts upon such positive representations of fact, notwithstanding the fact that the means of knowledge were directly at hand and open to the person signing such instrument, and where said representations are of the character to induce action upon the person signing said instrument, and, in fact, did induce the signing of such instrument, such inducement constitutes fraud and it is sufficient to vitiate such instrument, and it becomes immaterial whether the person signing such instrument was negligent in failing to use diligence or ordinary prudence to discover the falsity of such representation." 1934 OK 594, 43 P.2d 97, 98.

[13]     "Sutton unknowingly gave up his right to a jury trial. In addition, he testified that if he had to pay a share of the arbitration costs it would put him out of home. DSC certainly received an advantage, i.e., to forgo a potential jury trial and to have certain costs of arbitration paid by the customer." *Id*.

[14]     *Hardricks v. Alphera Financial Services and David Stanley Dodge, LLC*, No. 114,240/114,241 (OK

See Ex. 3, Order Affirming, Mar. 25, 2016. In *Hardrick v. David Stanley Dodge, LLC*, Case No. CJ-2014-6411 in the District Court of Oklahoma County, Plaintiff Hardrick signed a Purchase Agreement for the purchase of a Dodge Ram pickup truck. See Ex. 4, Order in CJ-2014-6411, July 30, 2015, Findings of Fact ¶ 1. The Plaintiff admitted she had signed in four areas marked with an "X," one of which being under the red-colored DRC. *Id*. at ¶¶ 2-5. Plaintiff admitted that no representations were made to her about the DRC. *Id*. at ¶ 6.

The DSD agent showed Plaintiff the price of the vehicle as well as verifying her address and told Plaintiff to make sure everything is correct and sign it. *Id*. at ¶ 7. The agent explained the purpose for her signature on the Purchase Agreement was "to verify the truck, that it was the exact truck," "to identify the Dodge that you're buying and the price of the vehicle and your address," and "to check her now address and now price of and the vehicle and her phone number." *Id*. No one precluded Plaintiff from reading the Purchase Agreement, including the DRC. *Id*. at ¶ 9. District Judge Patricia Parrish found that, because Defendant's agent undertook to speak about the contents of the Purchase Agreement, he was obligated to disclose all known facts, including the existence of the DRC, which the undisputed evidence indicates he did not disclose. *Id*. at Conclusions of Law ¶ 4. The district court denied DSD's motion to compel arbitration. *Id*., p. 3.

### i. Defendants misrepresented the arbitration provisions and the documents themselves.

Because Defendants, through one or more agents, undertook the responsibility of explaining the purchase documents, they had a duty to fully and accurately explain the Arbitration Provision. It is clear from the verified affidavit, attached hereto as Exhibit 1, that Defendants' agent or agents undertook the responsibility of explaining some, but not all, of the purchase

---

CIV APP March 25, 2016).

documents and, in particular, arbitration was not discussed or explained. Ex. 1, ¶¶ 9-16. Plaintiffs relied on Defendants' agent to explain the purpose of effect of the forms, and Plaintiffs had no opportunity to meaningfully review the forms, including the arbitration and delegation language. *Id*. Plaintiffs will testify that, had they known about arbitration, or what any of the individual terms within the arbitration provisions meant, they would not have agreed to the same.

Under well-established Oklahoma law, had the agents remained silent or refrained from discussing or explaining any of the forms or material parts of the forms, no duty would have arisen to explain each material part, including the arbitration provisions. Once any material part of the document was discussed, the agent had the duty to discuss all material parts to avoid misleading the Plaintiffs on the purpose of the documents. Because the agent(s) failed to do so and, in particular, failed to discuss or explain arbitration or the arbitration or delegation provisions within the documents, whether intentionally or not, the Plaintiffs' signatures were fraudulently induced. Under clear Supreme Court precedent, discussed *supra*, the provisions are invalid, as the conduct of the Defendants' agents amounts to constructive fraud.

### c. The arbitration provisions are unconscionable and therefore arbitration should not be compelled.

Whether a contractual provision is unconscionable is a question of law for the court to decide. *Stoll v. Chong Lor Xiong*, 2010 OK CIV APP 110, ¶17, 241 P.3d 301, 305 (2010). Under Oklahoma law, a contractual provision is unconscionable if "under the circumstances existing at the time of making of the contract, and in light of the general commercial background and commercial need of a particular case, clauses are so one-sided as to oppress or unfairly surprise one of the parties." *Bilbrey v. Cingular Wireless, L.L.C.*, 2007 OK 54, ¶ 19, 164 P.3d 131, 136 (2007) (quotations and citation omitted). "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of

the parties, together with contractual terms which are unreasonably favorable to the other party." *Id*. Whether a party had any meaningful choice is determined by considering "all the circumstances surrounding the transaction." *Barnes v. Helfenbein*, 1976 OK 33, 548 P.2d 1014, 1020 n.12 (Okla. 1976) (quotations and citations omitted).

Meaningful choice may be negated by gross inequality of bargaining power. *Id*. Other relevant factors include whether the parties had a "reasonable opportunity to understand the terms of the contract," or whether the important terms were "hidden in a maze of fine print" or "minimized by deceptive sales practices." *Id*. "Ordinarily, one who signs an agreement without full knowledge of its terms might be held to assume the risk that he had entered a one-sided bargain." *Id*. However, "when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his consent, was ever given to all the terms." *Id*.

The facts asserted herein, including the verified affidavits of the Plaintiffs, taken together with the language and terms of the arbitration agreements urged by the Defendants *and* the additional arbitration terms the Defendants are *not* discussing that are buried within the Payment Plan Agreement, should leave little doubt that the Plaintiffs had no bargaining power in regard to the arbitration provision. At any evidentiary hearing, further testimony will be presented to illustrate, among other material issues, the position of disadvantage held by the Plaintiffs in regard to the arbitration provisions.

## IV. DEFENDANTS WAIVED THEIR RIGHT TO ARBITRATE.

Defendants claim they have not waived the right to arbitration; however, it is clear that they have done so. First, rather than immediately seeking to compel arbitration in state court, Defendants filed an Answer and a Motion to Dismiss, and scheduled the latter for hearing

before the District Court of Tulsa County. Then, Defendants affirmatively invoked the jurisdiction of this Court by removing the case hereto without first seeking arbitration by filing pleadings without first seeking a stay. Plaintiffs have been forced to participate in active litigation in response to Defendants' actions that are wholly inconsistent with the right to arbitrate. Furthermore, as discussed *supra* at page 10, Defendants waited more than *two years* after denial of Plaintiffs' claim under the Vehicle Service Contract to attempt to initiate arbitration. Plaintiffs have been forced to wait long enough without relief; Defendants' Motion should be overruled.

## CONCLUSION

WHEREFORE, premises considered, Plaintiffs respectfully request this Court to overrule Defendants' *Motion to Compel Arbitration and Request to Stay Proceedings* or, alternatively, set the matter for evidentiary hearing to determine arbitrability of Plaintiff's claims.

Respectfully submitted,

SMOLEN | LAW, PLLC

/s/Laura L. Hamilton
Donald E. Smolen, II, OBA #19944
Laura L. Hamilton, OBA #22619
Hunter K. Bailey, OBA #34219
611 S. Detroit Ave.
Tulsa, OK  74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
laura@smolen.law
hunter@smolen.law
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of October, 2022, the foregoing was submitted to the Clerk of Court *via* the ECF System for filing and for transmittal of a Notice of Electronic Filing to all counsel who have appeared in this case.

/s/Laura L. Hamilton
Laura L. Hamilton