**NOT FOR OFFICIAL PUBLICATION** 

\*10322396990\*

# IN THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA

## DIVISION III

VALERIE HARDRICK and MICHAEL HARDRICK,

    Plaintiffs/Appellees,

vs.

ALPHERA FINANCIAL SERVICES, a Business Division of BMW FINANCIAL SERVICES, N.A., L.L.C., and David Stanley Dodge, L.L.C.,

    Defendants/Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)

COURT OF ... APPEALS
STATE OF ... MA

MAR 25 2016

MICHAEL S. RICHIE
CLERK

Case No. 114,240
(Cons. w/114,241)

| Rec'd (date) | 5 25 16 |
|---|---|
| Posted | |
| Mailed | |
| Distrib | |
| Publish | yes ___ no |

### APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY, OKLAHOMA

### HONORABLE PATRICIA G. PARRISH, TRIAL JUDGE

### AFFIRMED

M. Kathi Rawls,
Minal Gahlot,
RAWLS GAHLOT, P.L.L.C.,
Moore, Oklahoma,

    For Plaintiffs/Appellees,

Clayton D. Ketter,
Melvin R. McVay,. Jr.,
PHILLIPS MURRAH, P.C.,
Oklahoma City, Oklahoma,

    For Defendant/Appellant,
    Alphera Financial Services,

Derrick T. DeWitt,
Melanie K. Christians,
NELSON, TERRY, MORTON, DEWITT,
   PARUOLO & WOOD,
Oklahoma City, Oklahoma,

For Defendant/Appellant,
David Stanley Dodge,
L.L.C.

Opinion by Wm. C. Hetherington, Jr., Judge:

¶1    David Stanley Dodge, LLC (DSD) and Alphera Financial Services, (collectively, Appellants) appeal[1] a trial court order, entered after an evidentiary hearing, which denied their motion to compel arbitration. The order of the trial court denying the motion to compel arbitration is AFFIRMED.

STANDARD OF REVIEW

¶2    "An order denying a motion to compel arbitration is an appealable order. 12 O.S. § 1879(A)(1)." *Boler v. Security Health Care, L.L.C.*, 2014 OK 80, ¶ 7, 336 P.3d 468, 471. Whether parties entered into an agreement to arbitrate their claims is a question of law to be reviewed *de novo*. *Rogers v. Dell Computer Corporation*, 2005 OK 51, ¶ 18, 138 P.3d 826, 831. "In its re-examination of a trial court's legal rulings an appellate court exercises plenary, independent and nondeferential authority." *Gladstone v. Bartlesville Independent School District No. 30*, 2003 OK

---

[1] Alphera Financial Services (Alphera) filed a Petition in Error in Case No. 114,240 on August 27, 2015, and DSD filed a Petition in Error in Case No. 114,241 on August 28, 2015. The cases were consolidated in an August 31, 2015 Order of the Oklahoma Supreme Court.

30 ¶ 5, 66 P.3d 442, 446. "However, an application to compel arbitration may present questions of fact and law as to the existence or the enforceability of an arbitration agreement." *Bruner v. Timberlane Manor Limited Partnership*, 2006 OK 90, ¶ 8, 155 P.3d 16, 20. "Where the facts are controverted, mixed questions of fact and law may require deferential review standards. *Feightner v. Bank of Okla.*, 2003 OK 20, ¶ 3, 65 P.3d 624, 627." *Id.*

## FACTS

¶3     The underlying controversy arose over a 2013 Dodge Ram pickup truck purchase. Wife admitted she signed paperwork at her home to purchase a truck. Also present at that time were Husband, DSD salesman Sam McKinley (McKinley), and Joe Jeffers (Jeffers),[2] who knew Appellees. Jeffers did not mention any Dispute Resolution Clause (DRC) to Wife when he presented paperwork for her to sign. These are among the few facts agreed upon by the parties.

¶4     Appellees filed suit against Appellants for fraud, fraud in the inducement, misrepresentation, breach of contract, violation of the Oklahoma Consumer Protection Act via deceptive trade practices, violation of the federal Truth in Lending Act, violation of federal Regulation Z, intentional infliction of emotional distress, negligence, and conversion of a trade-in vehicle. They sought injunctive and

---

[2] McKinley did not know how long or even if Jeffers was employed by DSD at the time in question. Appellants' Joint Brief in Chief identifies Jeffers as a former salesman.

declaratory relief.  According to Appellees, the documents delivered regarding the
purchase of a truck did not show either the agreed price or the agreed-upon credit for
a trade-in vehicle.[3]   Appellees' Petition contended Wife signed documents
represented as being "a document to confirm her address and nothing more," that she
later was asked to "re-sign the paperwork" because "there were some issues with the
first set," and she was contacted a third time because DSD "needed yet another set of
sales documents executed."  They alleged "DSD sold its fraudulently induced loan
to Alphera."

¶5     DSD filed, and Alphera later joined, a motion to compel arbitration based upon
a DRC they contend was executed by Wife, and to stay the proceedings.  They also
requested an evidentiary hearing and findings of fact and conclusions of law.

¶6     In response, Appellees contended the DRC contained provisions rendering it
unconscionable and the agreement containing the DRC contained forged signatures.
Appellees attached an affidavit from Wife in support of their response to Appellants'
Motion to Compel Arbitration.  In her affidavit Wife stated Jeffers asked her to
execute a second purchase agreement on March 2, 2013, because "he said I did not

---

[3] Additional factual allegations, against DSD relating to formation of the underlying
contract, such as alleged price changes and that the vehicle delivered the day after Wife first
signed a purchase agreement was not the one shown them the day before and against Alphera
regarding financing, are outside the scope of this appeal.  Our task is limited to the question
whether there was a valid agreement to arbitrate the parties' disputes.

4

sign the first one correctly." Her affidavit states she was asked to "sign at least two more purchase agreements," and was told the paperwork was needed to "make corrections to the VIN of the RAM." Wife claims that each time she signed, Jeffers stated it was for "identifying the correct VIN of the Ram." Appellees also appended portions of deposition testimony by Jeffers in which he was asked if he told Wife anything about arbitration and he responded "no," and testimony in which he agreed he had "got them to sign an arbitration clause by telling them that they were purchasing a particular vehicle and the purchase agreement was for that purpose alone." Appellees argued, citing *Croslin v. Enerlex*, 2013 OK 34, 308 P.3d 1041, that once DSD's representative undertook to explain the terms of a purchase agreement, he assumed a duty to disclose terms and had fraudulently failed his duty to explain the DRC.

¶7     In reply, DSD denied there was any forgery in the case, and that Wife's self-serving affidavit was inadequate evidence to serve as a basis to deny the Motion to Compel Arbitration. DSD contended Appellees failed to prove actual fraud. The trial court issued an order for an evidentiary hearing to determine whether Wife was fraudulently induced to sign a DRC. The trial court determined that the last sentence of the DRC was unconscionable and ordered it severed from the balance of the DRC.[4]

---

[4] This sentence provided that if DSD "must hire legal counsel to enforce or defend" its rights under the DRC, Wife would pay DSD's attorney fees and costs incurred in DSD's
(continued...)

5

The trial court also entered findings addressing, *inter alia*, a motion to dismiss by Alphera.

¶8    At the evidentiary hearing, Appellants contended Wife signed a Purchase Agreement dated February 27, 2013, and one was admitted into evidence as their Exhibit 4.  Wife testified Jeffers and McKinley brought a truck to her Lawton home at the same time they brought a Dodge Durango her daughter had purchased.  She liked the truck and agreed to purchase it for her husband.  While at her home on March 1, 2013,[5] at about 10:30 at night, she signed a purchase agreement where an "X" was highlighted.  She was told by Jeffers to verify her address and the price of the truck.  Wife also was asked by him to verify "that it was the exact truck."  She did not compare the vehicle identification number on the truck then at the house to the one on the paperwork.  She trusted Jeffers "because he was our friend" and because he had been to their house socially, they had been to his house socially, and their children grew up and were in sporting events together.  Wife agreed she had signed

---

[4] (...continued)
successful defense of its rights.  There were no reciprocal terms regarding Wife's attorney fees and costs if she was successful.

[5] She testified "I signed a Purchase Agreement to purchase the vehicle at my home and at my work."  During the evidentiary hearing, no questions were asked about anything occurring "at my work" or about multiple executions of documents.  The February 27, 2013 Purchase Agreement was the only purchase agreement placed in evidence.

paperwork to purchase a truck when at her home, but she did not agree the February 27, 2013 Purchase Agreement was that paperwork.

¶9     Wife testified the signatures on the February 27, 2013 Purchase Agreement were not her signature and the telephone number listed on it was not her telephone number. She signs with her middle initial and those signatures lacked her initial. She was not given a copy of the paperwork presented at her home and could not agree she signed a purchase agreement like the one dated February 27, 2013.[6]   No representations were made to her about the DRC. On March 11, 2013, she went to the DSD dealership for the first time and tried to return the 2013 Dodge Ram. She did not sign anything then and did not receive copies of anything. She first saw the February 27, 2013 Purchase Agreement on about March 15, 2013, when a copy arrived in her mail.

¶10    Appellee Michael Hardrick (Husband) testified he was present when Jeffers presented paperwork to purchase a truck on March 1, 2013. Husband did not

---

[6] Wife also was questioned about an undated credit application allegedly signed by her on the day she purchased the truck. She denied it contained her signature and pointed to errors on it including an incorrect job description (she works as a registration coordinator at Southwest Medical Center, not as an R.N.), how the second "r" was missing from her last name in the signature, and an inflated, incorrect salary. In addition, she stated she was not at DSD on the date indicated by the notarization on the title for the trade-in vehicle. Although the testimony about these additional documents do not directly assist in determining if the parties formed a valid agreement for *arbitration*, they may bear on a determination of the credibility of the witnesses and the effect and weight to be given to their testimony, which are fact questions for the trial court, not questions of law for the appellate court. *Million v. Million*, 2012 OK 106, ¶ 8, 292 P.3d 21, 23.

recognize the signature on the February 27, 2013 Purchase Agreement as being Wife's because it was "spelled wrong" due to missing her middle initial.  He saw Jeffers present Wife with paperwork and heard her being told to check her address, the price, and her telephone number.  Husband testified that the telephone number on the February 27, 2013 Purchase Agreement was not her number.  He saw her sign forms but was not sure if she signed a purchase agreement.  During the meeting with Jeffers, McKinley and his Wife, he did not hear anything about arbitration or dispute resolution.

¶11   Appellees' daughter, Stephanie Hardrick, testified that on February 27, 2013, she was at the DSD dealership and Appellees were in Lawton.  She was at the house in Lawton "for a little bit" on March 1, 2013, awaiting delivery of a Dodge Durango she had purchased from DSD.  According to her, McKinley was driving the Dodge Durango and Jeffers was driving the 2013 Ram truck.  She saw Jeffers present paperwork to her mother after 9:00 p.m. on March 1, but she could not see what was presented, was not sure if McKinley could see what was presented from where he was seated, and did not know if a truck was left at the house because she left in the Dodge Durango.

¶12   McKinley testified that he was employed by DSD as New Car Inventory Manager.  He did not recall the exact date he met Wife at her house in Lawton, but placed it in the evening at "around the 27th of February."  He went to Appellees'

8

residence to bring them paperwork for the purchase of a 2013 Dodge truck including a purchase agreement, odometer statements, and a "long form" containing the interest rate and the price of the vehicle. McKinley testified the truck driven to the house that night was the same truck identified by the vehicle identification number in the February 27, 2013 Purchase Agreement. He was not aware of any other purchase agreement for the sale to Wife. He did not know whose signature on behalf of DSD is on the February 27, 2013 Purchase Agreement, but opined that it was "one of our finance guys." He claimed his reason for going with Jeffers "was just to deliver the vehicle" to Wife and to bring documents back. He did not know why he was listed as the salesman of record other than it was to make sure he received a commission. Two commission vouchers dated February 27, 2013, one each for Jeffers and for McKinley, were admitted as exhibits. McKinley neither disputed nor agreed that these forms were for the truck at issue but did agree the VIN number was the same as in the February 27, 2013 Purchase Agreement.

¶13   McKinley allowed Jeffers to present the paperwork to Wife because Appellees knew and trusted Jeffers, and Wife was instructed to "make sure everything is correct" on the paperwork, to verify that it was the correct truck, and to check her address and telephone number. After Wife had signed, Jeffers handed him the paperwork, he looked it over to assure everything was signed, and he placed the

paperwork in a manilla folder to take back to DSD. According to McKinley, they left the truck at Appellees' residence.

¶14   McKinley testified that the forms used by DSD at the time of the hearing were like the February 27, 2013 Purchase Order, having a section in red containing the DRC, and that he saw Wife sign at four highlighted spots, one of which was for the DRC. Asked about telephone logs entered as exhibits which showed calls to his telephone, he did not recall speaking with Wife after March 1, 2013, or talking to her by telephone after that date.

¶15   In the order on appeal, the trial court found Wife had admitted to signing a purchase agreement in four places marked with an "X," including underneath a DRC. The trial court found that DSD used a standard form containing a DRC in red, it was undisputed that Jeffers made disclosures about the purchase agreement's contents because Appellees knew and trusted him, and Jeffers, as representative for DSD, had explained the purpose for her signature was to verify her address, her telephone number, the truck's price, and that it was "the exact truck." He made no disclosures about the DRC. Wife admitted that what she signed looked like Appellants' exhibit, *i.e.*, the February 27, 2013 Purchase Agreement. The evidence was disputed whether Appellants' exhibit was the document Wife signed, but because she admitted signing a document which looked like the exhibit, the trial court declined to address the applicability of a direct benefit estoppel argument, a theory raised in *Hardrick v.*

*David Stanley Dodge, LLC*, Case No. CIV-15-540-C, a federal lawsuit brought by Appellees' daughter and by Husband, who had co-signed in DSD's sale of the Dodge Durango to her. In its Conclusions of Law, the trial court noted the principle that someone who signs a contract and has an opportunity to read a contract is presumed to know its contents and may not escape liability but also noted that this presumption may be overcome by a showing of fraud, citing *Chaney v. Chevrolet*, 2015 OK CIV APP 55, ¶ 13, 350 P.3d 170, 172-173. The trial court cited *Croslin v. Enerlex, Inc.*, 2013 OK 34, 308 P.3d 1041, for the proposition that "[w]here there is no duty to speak and a person undertakes to speak, he must disclose all known facts," and concluded the undisputed evidence showed Jeffers made disclosures, and, having undertaken to speak, he had failed to disclose all known facts, including the existence of the DRC. Appellants' motion to compel arbitration was denied and this appeal followed.

## THE APPEAL

¶16   In their Joint Brief in Chief, Appellants contend the trial court erred in concluding the DRC was unenforceable due to constructive fraud and in failing to compel arbitration consistent with the federal judge's opinion in the "analogous" lawsuit by Husband and Appellees' daughter against a financing entity and DSD arising from her purchase of a Dodge Durango on or about February 27, 2013.

11

¶17   Appellants contend the trial court should have followed the federal court's analysis in a lawsuit by Husband and by daughter. The federal district court found that to the extent they relied on *Croslin* and constructive fraud, they had "misapprehended the law." The federal court applied the direct benefits estoppel theory after concluding, *inter alia,* that they had relied upon the purchase agreement to file their lawsuit and had obtained "direct benefits" from the contract, *i.e.* the vehicle.[7] The federal district court found they could be bound by the arbitration provision "regardless of whether or not they actually signed that portion of the purchase agreement." The federal district court declined to conduct an evidentiary hearing and ordered the matter to arbitration, including claims against the financing entity, whose position was deemed "aligned with Defendant DSD." On appeal, Appellees argue the direct benefits estoppel theory, as applied by the federal district court, is contrary to Oklahoma law. The trial court found the doctrine inapplicable. We agree. "The issue as to the existence of an arbitration question presents a gateway question about whether the parties are bound by a given arbitration clause and raises a 'question of arbitrability' for a court to decide." *Oklahoma Oncology & Hematology P.C. v. US Oncology, Inc.*, 2007 OK 12, ¶ 25, 160 P.3d 936, 945-946. "A court must determine the existence of an arbitration agreement in the first

---

[7] According to the federal district court's Memorandum and Order, they had returned the Dodge Durango to DSD, which sold it at a loss and made a negative report affecting Husband and Appellees' daughter's credit reports.

instance." *Shaffer v. Jeffery*, 1996 OK 47, ¶ 23, 915 P.2d 910, 917.  (Citation omitted.) The trial court did not err in finding this estoppel theory inapplicable under Oklahoma law.

¶18     Appellants suggest the holding in *Croslin* is factually distinguishable because the constructive fraud in the context of mineral interests in that case involved non-disclosed facts not contained in the signed contract.  They contend *Croslin* does not apply because the DRC was disclosed in writing, there was no special duty to disclose the DRC, and no true statements were made by Jeffers so as to create a false impression regarding arbitration.

¶19     In *Croslin v. Enerlex, Inc.*, 2013 OK 34, ¶ 17, 308 P.3d 1041, 1047, the Court applied principles set forth in *Berry v. Stevens*, 1934 OK 167, 31 P.2d 950, Syllabus No. 6, which addressed constructive fraud in the procurement of a written instrument to hold that "[a]lthough a party may keep absolute silence and violate no rule of law or equity, yet, if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to disclose the whole truth." Citing *Barry v. Orahood*, 1942 OK 419, ¶ 10, 191 Okla. 618, 132 P.2d 645, 647, the Court held that "where there is no fiduciary relationship, a legal or equitable duty to disclose all material facts may arise out of the situation of the parties, the nature of the subject matter of the contract, or the particular circumstances surrounding the transaction," and that "[w]here the peculiar circumstances give rise to a duty on the

part of one of the parties to a contract to disclose material facts and the party remains

silent to his or her benefit and to the other party's detriment, the failure to speak

constitutes fraud. *Morris v. McLendon*, 1933 OK 619, 167 Okla. 68, 27 P.2d 811,

Syllabus, No. 2." *Id.*

¶20    The Syllabus by the Court in *Dusbabek v. Bowers*, 1934 OK 594, ¶ 0, 173

Okla. 53, 43 P.2d 97, an action involving an engine and a threshing machine,

separator, and other equipment, is instructive:

> Where a party seeks to enforce an instrument against the person who signed it, and the signer charges such person with fraud in inducing him to sign said instrument on account of false and fraudulent representations concerning the contents of such instrument; and where the person signing such instrument acts upon such positive representations of fact, notwithstanding the fact that the means of knowledge were directly at hand and open to the person signing such instrument; and where said representations are of the character to induce action upon the person signing said instrument, and, in fact, did induce the signing of such instrument, such inducement constitutes fraud and it is sufficient to vitiate such instrument, and it becomes immaterial whether the person signing such instrument was negligent in failing to use diligence or ordinary prudence to discover the falsity of such representation.

¶21    In light of this analysis in *Dusbabek*, we conclude the trial court's application

of the principles explained in *Croslin* is consistent with long-standing precedent.

Consequently, under the applicable standard of review, we defer to the trial court's

14

factual determinations and find no error of law.  The order of the trial court denying

the motion to compel arbitration is **AFFIRMED**.

BELL, P.J., and JOPLIN, J., concur.

15