IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) JAMES BOLES,<br>(2) BARBARA BOLES,<br><br>                    Plaintiffs,<br><br>v.<br><br>(1) CARSHIELD, LLC,<br>(2) NRRM, LLC,<br>(3) CONCORDIAN, LLC d/b/a<br>     AMERICAN AUTO SHIELD,<br><br>                    Defendants. | Case No. 22-cv-0034-JFH-CDL<br><br>*Removed from the District Court of Oklahoma County, Oklahoma Case No. CJ-2021-3014* |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Defendants respectfully submit the following Reply in Support of their Motion to Compel Arbitration (Dkt. # 25) ("Defendants' Motion"), and to respond to Plaintiff's Response in Opposition (Dkt. # 26).

Preliminarily, Defendants have satisfied their "initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate." *Brown v. Bob Moore Auto Grp., L.L.C.,* 2019 WL 3976848, at * 4 (W.D. Okla. Aug. 22, 2019) (quoting *BOSC, Inc. v. Bd. of Cnty. Commissioners of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017)). Defendants' Motion set forth undisputed facts (Dkt. #25, at 3-9), so "the burden [then] shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith." *Id.* Plaintiffs do not meet their burden. Rather, their "Relevant Facts" and supporting evidentiary materials do not sufficiently deny or conflict with Defendants' undisputed facts. As a result, the Court should take Defendants' facts as admitted, and arbitration is still required as to all claims.

## I. PLAINTIFF'S DECLARATION IS DEMONSTRABLY AND MATERIALLY INCORRECT SO THE COURT SHOULD DISREGARD IT.

Since Defendants' facts remain substantially undisputed, Defendants will only address those "Relevant Facts" upon which Plaintiffs attempt to create a dispute in the Declaration of James Boles (Dkt. #26-1) (the "Declaration"). Plaintiffs attempt, but fail, to create a dispute regarding the facts outlined in Defendants' fact paragraphs 3 and 4.

In an effort to invalidate the arbitration provision, the Declaration makes untrue statements that are directly controverted by a recorded phone call. Ex. 1, Recording[1]; Ex. 2, Transcript. Most significantly, Plaintiff James Boles ("Boles") incorrectly states in the Declaration that he did not receive a copy of the relevant contract until after he filed this case. Dkt. # 26-1, ¶ 17. But Boles said exactly the opposite in a recorded call to CarShield on December 26, 2019—one week after purchasing the VSC and weeks before the cancellation period ended—where he acknowledged that he and his wife received the VSC and asked specific questions about the terms of the VSC. See Ex. 2 (Boles stating, "[M]y wife is looking at the paperwork you guys sent her . . . And it don't say nothing about the, ah, door lock motor."). This recorded conversation also contradicts the Declaration's statements (Dkt. # 26-1, ¶¶ 13, 16) that Plaintiffs were not able to review the VSC. Although Defendants noted delivery of the VSC and this conversation in their Motion (Dkt. # 25, ¶ 5; Dkt. # 25-4, ¶ 6, 8-9), Plaintiffs ignore it, and it is therefore uncontroverted.

Thus, Boles's own recorded words show that Plaintiffs did receive the VSC and did have an opportunity to review its terms (which included the arbitration provisions at issue) within 30 days and to decide to cancel the contract. But rather than cancel the contract after reviewing it, Plaintiffs undisputedly continued to make monthly payments for several months thereafter, ultimately submitting a repair claim under the VSC in September 2020. Dkt. # 25-4, ¶¶ 9, 10.

---

[1] Exhibit # 1 is being contemporaneously delivered to the Court and the Parties via thumb drive.

Under these circumstances and the evidence presented, Plaintiffs' Declaration should be viewed only as a self-serving attempt to create a factual controversy where none actually exists. Compare Dkt. # 26-1, with *Rivera v. Pitt*, 44 F. App'x 934, 936–37 (10th Cir. 2002) (unpublished) (citing *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir.1995)) (proffered affidavit "did not present any admissible evidence because the statements . . . were conclusory, self-serving, and so wholly lacking in foundation that they are inadmissible under the Federal Rules of Evidence.") (internal quotation marks omitted). Because "conclusory and self-serving affidavits are not sufficient" to create a genuine factual dispute, *id.* (quoting *Murray*, 45 F.3d at 1422), the Court should reject the statements made in the Declaration and find that there is no genuine dispute as to the parties' agreement to arbitrate these claims under the terms of the VSC.

**II. THE EVIDENCE ESTABLISHES A VALID ABRITRATION AGREEMENT EXISTS UNDER THE VSC AND DEFENDANTS' MOTION SHOULD BE GRANTED.**

In their Response, Plaintiffs primarily challenge the "first" step of the arbitration inquiry, that is, "contract formation – whether the parties entered into any arbitration agreement at all." *Brown*, 2019 WL 3976848, at *3 (emphasis in original); see generally Dkt. # 26. On "applications to compel arbitration, the existence of an agreement to arbitrate is a question of law", *Sutton v. David Stanley Chevrolet, Inc.*, 2020 OK 87, ¶ 8, 475 P.3d 847, 852. Accepted tenets of contract formation "apply with equal force to arbitration agreements" in accordance with Oklahoma jurisprudence, requiring the elements of offer, acceptance, and consideration to create a valid contract. *Brown*, 2019 WL 3976848, at *5.

Here, Plaintiffs argue that there is not a valid agreement to arbitrate, alleging that (1) Plaintiffs did not physically sign the VSC containing the arbitration provisions, (2) the agreement to arbitrate was fraudulently induced, and that (3) the arbitration provision is unconscionable and unenforceable. Dkt. # 26, at 13. Nevertheless, the undisputed facts demonstrate that a valid

Page 3

agreement to arbitrate does exist under the VSC and Plaintiffs are bound thereby. *B.A.P., L.L.P. v. Pearman*, 2011 OK CIV APP 30, ¶ 7, 250 P.3d 332, 336; *accord*, Dkt. # 25; Exs. 1-2 hereto.

A. **PLAINTIFFS CHALLENGE THE ENFORCEABILITY OF THE ENTIRE VSC CONTRACT, NOT JUST THE ARBITRATION PROVISION.**

Plaintiffs' Response erroneously asserts that they were fraudulently induced to accept ***only*** the arbitration provision of the VSC.[2] Dkt. # 26, at 17-23. Importantly, however, Plaintiffs' fraudulent inducement claim relates to the enforceability of the entirety of the VSC contract, not just the arbitration terms therein, and this issue is therefore a matter for the arbitrator to decide. *See* Pet., Dkt. #2-1, at ¶ 33 ("Defendants misrepresented and/or concealed the terms and conditions of the Service Contract …."); ¶ 35 ("But for the foregoing misrepresentations and concealments, the Plaintiffs would not have entered into the Service Contract."). Thus, Plaintiffs actually dispute the enforceability of all of the VSC's terms.

Where a plaintiff claims fraudulent inducement as to the contract as a whole, the arbitrator addresses that claim along with the remainder of the dispute. 12 O.S. § 1857(C) ("An arbitrator shall decide whether … a contract containing a valid agreement to arbitrate is enforceable."). *See also In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1210 (10th Cir. 2016) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)) ("almost 50 years ago the Supreme Court held that the arbitrator, not a court, should determine whether a contract including an arbitration provision is enforceable."); *accord*, *Signature Leasing, LLC v. Buyer's Group, LLC,* 2020 OK 50, 466 P.3d 544 (stating that "[t]he language in § 1857, in light of its amendment after prior judicial pronouncement, mandates that determination of

---

[2] Plaintiffs cite a litany of cases allegedly proving the fraudulent inducement, all of which rely upon a "false impression" that the specific provision or document signed by the plaintiff was other than what it was. Dkt. # 26, at 17-22. Although Defendants assert that no such "false impression" as to the arbitration provision was at play in this case, these arguments and cases are inapposite to the actual claims here, as discussed *infra*.

fraudulent inducement to the entire contract is a question for the arbitrator . . . fall[ing] in line with the United States Supreme Court's interpretation of [9 U.S.C. § 2]."). Just as the recorded call contradicts the incorrect statements in Boles' unsworn declaration (Dkt. # 26-1), Plaintiffs' own Petition contradicts Plaintiff's misleading arguments in their Response.

**B.    PLAINTIFFS VOLUNTARILY ACCEPTED THE BENEFITS OF THE VSC, AND ARE THEREFORE BOUND BY ALL OF ITS TERMS, INCLUDING THE ARBITRATION TERMS.**

Plaintiffs argue that the Court should not enforce the VSC, including the arbitration provision,[3] because Plaintiffs did not physically "sign" the VSC. Dkt. # 26, p. 11. But this argument is contradicted by Plaintiffs' own petition, which acknowledges the VSC is a binding contract that Plaintiffs sue to enforce. The Court should summarily reject Plaintiffs' attempt to disclaim a contract they sued to enforce.

Beyond Plaintiffs' contradictory positions, Plaintiffs are wrong that a signature is needed to create a valid contract. On the contrary, acceptance can take many forms. *See, e.g.*, *In re Com. Fin. Servs., Inc.*, 294 B.R. 164, 170 (Bankr. N.D. Okla. 2003) (citing Oklahoma law) ("Acceptance . . . results when a party expresses his or her intent to accept the offer, by word, sign, writing or act, communicated or delivered to the person making the offer or the offeror's agent.") (quotation marks omitted); *E. Cent. Oklahoma Elec. Co-op., Inc. v. Oklahoma Gas & Elec. Co.*, 1973 OK 3, 505 P.2d 1324, 1329 (under Oklahoma law, "no formalities are required" to convey acceptance; "[i]t is sufficient if in the course of the transaction the party to be charged in some writing signed by him or his duly authorized agent recognized or ratifies an agreement sufficiently explicit in terms and disclosed in writings which show they relate to the same transaction.").

---

[3] Plaintiffs reference another arbitration provision contained within the payment plan appended to the VSC. But this is irrelevant as Defendants don't rely on the arbitration provision in the payment plan as the basis for moving to compel arbitration. Because Plaintiffs' claims relate to his service warranty claim made under the VSC, the arbitration terms in the VSC (including the State Variance) are those relevant to the inquiry here.

Unquestionably, acceptance of a contract includes "performance of the conditions of an offer or acceptance of the consideration in connection with an offer." *Oklahoma Gas & Elec. Co. v. Toshiba Int'l Corp.,* 2016 WL 3659941, at *5 (W.D. Okla. July 1, 2016) (citing 15 O.S. § 70). Moreover, "where an offeree accepts the benefits of a transaction, [he] also consents to the obligations which are known or ought to have been known to the offeree." *Id.* at * 5 (citing 15 O.S. § 75). Indeed, the parties explicitly agreed that Plaintiffs' continued payment after receiving the contract would be deemed acceptance. Dkt. # 25-1, at 3 (stating that "[b]y signing below, **or by making your first payment after you have received a . . . copy of this agreement,** you acknowledge receipt of a completed copy of this agreement, **you acknowledge that you have read this agreement**, **including the arbitration provisions below**, and **you agree to be bound by the terms of this agreement**.") (emphasis added).

Here, Plaintiffs accepted the terms of the VSC, including the arbitration provision, by making payments after receiving the complete copy of the VSC. Dkt. # 25-4, at ¶¶ 6-9. Plaintiffs are thus bound by the contract. *See Oklahoma Gas*, 2016 WL 3659941, at * 5; *cf. First Nat. Bank & Tr. Co. of El Reno v. Stinchcomb*, 1987 OK CIV APP 1, 734 P.2d 852, 854 ("[I]f a party to a contract can read and has the opportunity to read the contract but fails to do so, he cannot escape its liability . . . [and] one has a duty to apprise himself of the contents of a contract.").

The VSC terms also provided Plaintiffs with "a reasonable opportunity to reject those terms if [they] chose to," *Oklahoma Gas*, 2016 WL 3659941, at * 5, as they could cancel the contract at any time "for any reason." State Variance, Dkt. # 25-2; *see also* Dkt. # 25-1, at § O (p. 18) (original cancellation terms). Plaintiffs did *not* reject the VSC's terms afterwards, but "ch[ose] instead to proceed with the performance and [to] accept the benefits of the transaction." *Oklahoma Gas*, 2016 WL 3659941, at * 5; Dkt. # 25-4, at ¶¶ 10-11.

Plaintiffs' current argument that they never accepted the complete terms of the VSC is contradicted by their own actions (and recorded words). "In these circumstances, [Plaintiffs'] failure to reject the terms at issue, coupled with [their] conduct in performing the contract[,] were sufficient to constitute acceptance" of the VSC's terms, including the incorporated agreement to arbitrate. *Oklahoma Gas & Elec.*, 2016 WL 3659941, at *5. Plaintiffs' acceptance of the VSC through their conduct and actions therefore created "a binding contract between the parties" to submit these claims to arbitration. *In re Com. Fin. Servs., Inc.*, 294 B.R. at 170 (citing Oklahoma law); *cf. Loc. Fed. Sav. & Loan Ass'n v. Burkhalter*, 1987 OK CIV APP 23, 735 P.2d 1202, 1205 ("[V]oluntary acceptance of the benefit of a transaction is ***equivalent to a consent to all the obligations arising from it*** so far as the facts are known, or ought to be known to the person accepting.") (emphasis added). As "the party opposing arbitration," *BOSC,* 853 F.3d at 1178, n. 5, Plaintiffs have failed to "show that a material factual dispute exists" regarding the validity of the VSCs arbitration terms. *Id.* The Court should therefore compel the parties to arbitration.

Plaintiffs cite two cases for the proposition that CarShield's failure to explicitly discuss the arbitration provision in the phone call renders that provision unenforceable. Dkt. # 26, pp. 15-18. But despite Plaintiffs' lengthy discussion, the cases are easily distinguishable. The defendant in *Sutton v. David Stanley Chevrolet, Inc.*, 2020 OK 87, ¶ 20, made an affirmative misrepresentation that the consumer's signature merely served to verify trade-in information. The defendant in *Key Finance, Inc. v. Koon*, 2016 OK CIV APP 27, ¶ 6, made affirmative representations regarding the purpose of the arbitration provision but did not reveal that the provision waived the consumer's right to a jury trial. Neither circumstance exists here. Nor did the contracts at issue in *Sutton* or *Koon* give the consumer the same unilateral right to cancel for a full refund, which existed here.

C. **THE EVIDENCE COMPLETELY UNDERMINES PLAINTIFFS' UNCONSCIONABILITY ARGUMENT, WHICH FAILS UNDER OKLAHOMA LAW.**

Lastly, Plaintiffs argue that the terms of arbitration are unconscionable and cannot be enforced against them. Under Oklahoma law, "[a]n unconscionable contract is one in which, 'at the time of making of the contract, and in light of the general commercial background and commercial needs of a particular case, clauses are so one-sided as to oppress or unfairly surprise one of the parties." *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1236 (10th Cir. 2007) (quoting *Barnes v. Helfenbein*, 1976 OK 33, 548 P.2d 1014, 1020).

Here, Plaintiffs have failed to meet their "onerous" burden to demonstrate that the arbitration terms of the VSC are unconscionable. The evidence establishes that the parties were "involved in an arms-length business transaction", *Silk v. Phillips Petroleum Co.*, 1988 OK 93, 760 P.2d 174, 179, and that the terms of the VSC repeatedly encouraged Plaintiffs to read the entirety of the contract. Dkt. # 25, at 4-5, ¶¶ 1-6; *cf. Hancock v. Am. Tel. & Tel. Co.*, 2011 WL 3626785, at *5 (W.D. Okla. Aug. 11, 2011), *aff'd*, 701 F.3d 1248 (10th Cir. 2012). Additionally, "[t]here is no evidence presented showing [Boles] was not given the opportunity to examine and read the contract[,]" *Elsken v. Network Multi-Fam. Sec. Corp.*, 49 F.3d 1470, 1474 (10th Cir. 1995), as Plaintiffs received the VSC, carefully reviewed its terms, and did not cancel the contract during the 30-day grace period. However, "[r]egardless of whether [Plaintiffs] read the document," they are bound by its terms as there "is no indication" that they did not intend to enter into the VSC. *Elken*, 49 F.3d at 1474; *see also* Exs. 1-2. Moreover, the arbitration terms stated in the VSC are not "unreasonably favorable to" one party over another, *Hancock*, 2011 WL 3626785, at * 8 and "[t]he fact that the arbitration clauses are found in form contracts, even arguably adhesion contracts, alone does not under the instant circumstances render these clauses invalid." *Id.* (citing *Lloyd v. Northrop Grumman Systems Corp.*, 2008 WL 320021 (W.D. Okla. 2008).

Thus, because Plaintiffs have made "no evidentiary showing that the[] arbitration clauses 'are so onesided as to oppress or unfairly surprise one of the parties,' or that the circumstances "directly relate to fraud and deceit," their unconscionability argument fails. *Id.* (quoting *Barnes*, 548 P.2d at 1020) (citation marks omitted).

### III. THE VSC IS NOT A POLICY FOR INSURANCE.

The entire first section of Plaintiffs' Response is mistakenly predicated on the fact that the VSC is an insurance policy. Dkt. # 26, at 5-11. The VSC is ***not*** insurance as a matter of law as Defendants show in their pending motion to dismiss. Dkt. # 9, 18. As established there, the VSC is not an insurance contract, but is instead a service warranty contract, governed by the Service Warranty Act. Further, Plaintiff's reliance on *Sparks v. Old Republic Home Protection Company, Inc.,* 2020 OK 42, 467 P.3d 680, is also wholly misplaced, as Plaintiffs conveniently fail to mention the facts surrounding that court's decision. The defendant in *Sparks* initially admitted "that the contract at issue was 'insurance' and it was an 'insurance company'", and its parent company also listed the defendant as one of its 27 insurance companies. 467 P.3d at 688. The court also pointed to a previous case in which the same defendant had "convincingly argued that the company's 'home warranty plans are analogous to insurance.'" *Id.* at 689. No such facts exist in this case. On the contrary, the VSC here specifically states that "[t]his is not an Insurance Contract" and that AAS is a licensed "Oklahoma Service Warranty Association." Dkt. # 25-1, at 21. Unlike the defendant in *Sparks,* Defendants here have expressly rejected any similarities to insurance carriers and have conducted business in Oklahoma only in accordance with the SWA. *Sparks* is therefore distinguishable, and because the VSC is not a contract for insurance, Plaintiffs' argument that it is not subject to Oklahoma Uniform Arbitration Act or the Federal Arbitration Act fails.

**IV.     WAIVER OF ARBITRATION REQUIRES MORE THAN PASSAGE OF TIME.**

Plaintiffs' timeliness argument against arbitration is also erroneous. Dkt. # 26, at 11-13. Plaintiffs assert that Defendants did not request arbitration within 60 days of Defendants' decision, based on the language contained in Section M of the VSC, which states, "[t]o begin arbitration, either YOU or WE must make a written demand for arbitration within sixty (60) days of ADMINISTRATOR'S final decision." Dkt. #25-1, at 17. Again, Plaintiffs omit facts necessary for the inquiry at issue. Defendants were unaware of any legal dispute regarding the contract until Plaintiffs filed suit on December 10, 2020, approximately two weeks after the denial letter was sent on November 24, 2020. *Compare* Dkt. # 2-1, *with* Dkt. # 25-5. Prior to filing this lawsuit, Plaintiffs gave no indication they disputed the denial of their service warranty claim. Once litigation began, Defendants only attempted to satisfy their procedural obligations and preserve all available defenses, then requested mandatory arbitration pursuant to the contract terms. And as already explained in prior briefing, it takes more than simply the mere passage of time to establish a waiver of Defendants' right to arbitration. *See* Dkt. #2 5, at 26-29; *see also Howell's Well Serv., Inc. v. Focus Grp. Advisors, LLC,* 2021 OK 25, ¶¶ 17-22, 507 P.3d 623, 627. Under *Howell's* and the other authority cited in Defendants' Motion, the request for arbitration in this case is timely and has not been waived.

**CONCLUSION**

For the reasons stated herein and in Defendants' Motion to Compel Arbitration (Dkt. # 25), the Court should order all parties to mandatory arbitration and enter a stay of these proceedings.

Respectfully submitted,

**DOERNER SAUNDERS DANIEL & ANDERSON, LLP**

/s/  Alexandra J. Gage, OBA No. 33874
Michael Linscott, OBA No. 17266
Brian Keester, OBA No. 33208
Alexandra J. Gage, OBA No. 33874
Two West Second Street, Suite 700
Tulsa, OK 74103-3117
T: 918.591.5308 | F: 918.925.5308
Email: mlinscott@dsda.com
　　　　bkeester@dsda.com
　　　　agage@dsda.com

-and-

Sara E. Potts, OBA No. 32104
210 Park Avenue, Suite 1200
Oklahoma City, OK 73102
T: 405.319.3500 | F: 405.319.3537
Email: spotts@dsda.com

*Attorneys for Defendants NRRM, LLC, and American Auto Shield, LLC*

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that, on October 17, 2022, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system to the following counsel of record:

> Donald Smolen
> Laura Hamilton
> Lawrence Murphy
> Hunter Bailey
> Smolen Law Firm

                                            /s/ Alexandra J. Gage

6152448.1