IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) JAMES BOLES; and

(2) BARBARA BOLES,

      Plaintiffs,

      v.                                                No. 22-cv-00034-WPJ-MTS

(1) CARSHIELD, LLC,
a foreign limited liability company;

(2) NRRM, LLC
a foreign limited liability company; and

(3) CONCORDIAN, LLC d/b/a AMERICAN
AUTOSHIELD, a foreign limited liability company,

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO COMPEL ARBITRATION**

**THIS MATTER** comes before the Court[1] upon Defendants NRRM and American Auto Shield's ("Defendants")[2] Motion to Compel Arbitration and Request for Stay of Proceedings, filed September 12, 2022. Doc. 25. Plaintiffs James and Barbara Boles timely responded in opposition (Doc. 26), to which Defendants replied (Doc. 28). Having reviewed the parties' briefing and the applicable law, the Court finds Defendants' Motion to Compel is well-taken and therefore, **GRANTS** the Motion. However, for the reasons detailed below, the Court dismisses the matter without prejudice rather than stay the proceedings.

---

[1] Chief United States District Court Judge William P. Johnson of the District of New Mexico was assigned this case as a result of the Tenth Circuit Order designating Judge Johnson to hear and preside over cases in the Northern District of Oklahoma.

[2] Defendants identify that Plaintiff improperly pled the parties. Doc. 25, at 7. There are two defendants: NRRM, LLC d/b/a CarShield, and American Auto Shield, LLC (AAS). *Id.* Plaintiff acknowledges the mistake and will amend the pleadings. Doc. 26 at 4 n.4.

## STANDARD

This matter involves the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. Within the context of a motion to compel arbitration, the standard is similar to that of summary judgment. The "party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate." *BOSC, Inc. v. Bd. of Cnty. Comm'rs of Cnty. Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017). If the moving party meets this burden, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply" with the agreement. *Id.* "When 'a quick look at the case' reveals that 'no material disputes of fact exist,' a district court may 'decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration.'" *Id.* (quoting *Howard v. Ferrellgas Partners*, 748 F.3d 975, 978 (10th Cir. 2014)).

In sum, "Defendants as the moving parties [have] the burden to show that the . . . Arbitration Clauses apply to Plaintiffs [and if this burden is met,] Plaintiffs could attempt to rebut that showing with evidence establishing a genuine dispute as to whether the provisions apply." *Hancock v. American Tel. and Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012). This framework illuminates the preceding recitation of facts.

## BACKGROUND[3]

In December 2019, Plaintiffs called Defendants to purchase a month-to-month Vehicle Service Contract ("VSC")[4] for their 2009 Chevrolet Silverado. Doc. 2-1, at ¶¶ 16–17; Doc. 25, at

---

[3] Defendants, in their Motion, provide the Court with a Statement of Undisputed Material Facts, supported by depositions, documents, and facts in the record. Doc. 25, at 9–15. Plaintiffs, in their Response, do not provide a statement of undisputed material facts and neither do they expressly dispute Defendants' Statement of Undisputed Material Facts. They do, however, provide a short recitation of "Relevant Facts," consisting largely of the procedural history and incorporation of their original state petition. Doc. 26, at 4–6.

[4] The VSC is attached to Defendants' Motion to Compel (Doc. 25) as Exhibit 1. When the Court cites the VSC, the pagination is consistent with Ex. 1.

7. During this call finalizing the purchase of the VSC, Plaintiffs gave details about the vehicle and discussed the terms and conditions of the VSC, including payment terms. Doc. 25, at 10. Plaintiffs then authorized the CarShield agent to sign the VSC on their behalf and provided an email address to send the executed VSC after the call. Doc. 25, at 11. The VSC was emailed to Plaintiffs, payment was made, and Plaintiffs reviewed its terms. *Id.* Although signed by an authorized agent, the VSC allows for acceptance of its terms in the following ways:

> BY SIGNING BELOW, OR BY MAKING YOUR FIRST PAYMENT AFTER YOU HAVE RECEIVED A MAILED OR ELECTRONIC COPY OF THIS AGREEMENT, YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT, INCLUDING THE ARBITRATION PROVISION BELOW, AND YOU AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT.

VSC, at 24. Elsewhere, the VSC states,

> This Agreement shall be effective when signed by you and us, or where applicable, upon the first of the following events to occur after we mail you a copy of the Agreement: (1) you sign and transmit to us a copy of the signed Agreement, in wet ink or electronically, or (2) you make your first payment. Either signature or payment according to the terms of the Agreement ratifies and makes effective your and our obligations under the Agreement. You may not modify the preprinted terms of this Agreement.

VSC, at 26. Under the terms of the VSC, Plaintiffs agreed to pay a monthly fee in exchange for vehicle repair coverage and benefits, subject to exclusions. Doc. 2-1, at ¶ 17; Doc. 25, at 7. Additionally, since the VSC was executed in the state of Oklahoma, the VSC also includes an Individual State Variance Requirements section that supplements the VSC. *See* VSC, at 21. Lastly, the VSC includes a provision stating the "Agreement constitutes the entire agreement between [the parties]" and "supersedes any other written or oral agreement between the parties." *Id.* at 26.

On December 26, 2019, Plaintiffs called CarShield, advising that they were reviewing the VSC terms that had been sent via email and asked some further questions regarding "door lock

3

motor" coverage. Doc. 25, at 11. Plaintiffs did not take issue with any of the VSC's terms at this time, and they did not cancel the VSC. *Id.* Plaintiffs could have cancelled the contract in writing at any time, pursuant to the Oklahoma Variance Requirement,

> You may cancel this contract for any reason at any time. In the event You cancel this Service Contract within the first thirty (30) days after the receipt of this contract and no claim has been authorized or paid, You are entitled to a full refund.".

VSC, at 21.

Nine months after purchasing the VSC, on August 20, 2020, Plaintiffs' vehicle suffered a "mechanical breakdown," resulting in an inoperable vehicle. Doc. 2-1, at ¶ 18. Plaintiffs reported this engine issue to Defendants and a formal repair claim was opened under Plaintiffs' VSC around September 1, 2020. Doc. 2-1, at ¶ 19; Doc. 25, at 12. Defendants denied coverage of Plaintiffs' claim in a letter sent in November 2020, alleging that under Sections D.2(m) and (p) of the VSC, Plaintiffs' claim fell under the exclusions of the VSC. Doc. 25, at 12; Doc. 25, Ex. 5 (Denial Letter).

About a year later after denying the claim, Plaintiffs sued Defendants in Oklahoma state court on December 10, 2021. Doc. 2-1. Plaintiffs allege breach of contract, fraudulent inducement, breach of the duty of good faith and fair dealing, violation of the Oklahoma Consumer Protection Act, and seek punitive damages. *Id.* Then, on September 12, 2022, Defendants filed a motion to compel arbitration. Doc. 25.

## DISCUSSION

Defendants move to compel arbitration and offer many arguments in support. Doc. 25, at 15–26. Plaintiffs disagree, making four arguments. First, they argue that arbitration is barred since the contract is an insurance contract; second, the Defendants failed to timely initiate arbitration under its terms; third, no valid and enforceable arbitration agreement or delegation clause exists;

4

and fourth, defendants waived their right to arbitrate. Doc. 26, at 8–25. The Court will address Plaintiffs' arguments and for the reasons detailed below, the Court finds Defendants have met their burden and the motion to compel is well-taken.

**I.      Governing Law**

The VSC does not specify whether the Oklahoma Uniform Arbitration Act ("OUAA"), Okla. Stat. tit. 12, § 1851, et seq., or the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq. governs. Regardless, the standards under the respective Acts are substantially the same and the Court reaches the same result under either act.

"The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The "primary substantive provision of the Act," § 2, states:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Thus, courts must place "arbitration agreements on an equal footing with other contracts" and enforce them as so. *Rent-A-Center*, 561 U.S. at 67. The OUAA contains a similar provision. *See* Okla. Stat. tit. 12, § 1857 ("An Agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract."). Section 3 of the FAA implements § 2's substantive rule, providing that, if a suit is brought in a federal court and the issues involved are referable to arbitration, then, "on application of one of the parties stay the trial of the action until such arbitration has been had" consistent with the arbitration agreement. 9 U.S.C. § 3. "Indeed, § 4 provides that a court 'shall' order arbitration upon being satisfied that the making of the agreement for arbitration is not in

issue." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (internal quotation marks omitted). Overall, both the FAA and the OUAA establish a liberal policy favoring arbitration agreements and a strong presumption in favor of arbitration. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98; *Green Tree Servicing, LLC v. Hill*, 370 P.3d 347, 349 (Okla. Civ. App. 2013).

While the FAA favors arbitration agreements, a legally enforceable contract is still a prerequisite for arbitration, and without such a contract, parties will not be forced to arbitrate. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944–45 (1995) (stating that the presumption in favor of arbitration is reversed when there is a dispute as to the existence of an agreement). Questions of an arbitration agreement's *validity* encompass two types of challenges. *Rent-A-Center*, 561 U.S. at 70. The first type "challenges specifically the validity of the agreement to arbitrate, and the other challenges the contract as a whole, either on a ground that directly affects the entire agreement" or the "illegality of one of the contract's provisions renders the whole contract invalid." *Id.* (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 564 U.S. 440, 444 (2006)). Overall, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002).

In all, whether the parties agreed to arbitrate is a question of law to be decided applying state contract law—here, Oklahoma law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Okla. Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 160 P.3d 936, 946 (Okla. 2007).

**II.    The Contract**

Under Oklahoma law, a legally enforceable contract requires that "1) the parties were capable of contracting; (2) they consented to the terms; 3) the contract had a lawful object, and (4)

there was sufficient consideration." *Moore v. Dirt Motorsports, Inc.*, 2009 WL 2997077, at *10 (W.D. Okla. Sept. 15, 2009) (citing Okla. Stat. tit. 15, § 2 (1991)). The requisite consent must be mutual, meaning there is "an offer and an unequivocal acceptance." *Id.* (citing Okla. Stat. tit. 15, § 51).

Here, Defendants have satisfied their burden that a legally enforceable contract exists. The VSC states:

> BY SIGNING BELOW, OR BY MAKING YOUR FIRST PAYMENT AFTER YOU HAVE RECEIVED A MAILED OR ELECTRONIC COPY OF THIS AGREEMENT, YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT, INCLUDING THE ARBITRATION PROVISION BELOW, AND YOU AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT.

VSC, at 24. Plaintiffs called Defendants, discussed the contract's terms, authorized the agent to sign the VSC, were emailed a complete copy of the VSC, reviewed the VSC and called again to discuss it, made their monthly payments pursuant to the VSC, and even seek to enforce the contract in this lawsuit. Despite Plaintiffs' arguments, their signatures were not required for acceptance of the contract because "Oklahoma law does not require such formalistic execution of a contract." *Born v. Progrexion Teleservices, Inc.*, 2020 WL 4674236, at *11 (D. Utah Aug. 11, 2020). An enforceable contract exists, and the Court will now proceed to the arbitration agreement.

In pertinent part, the VSC includes the following clause:

> **M. Dispute Resolution**
>
> Any legal dispute between YOU and ADMINISTRATOR relating to this CONTRACT may be resolved by arbitration. To begin arbitration, either YOU or WE must make a written demand for arbitration within sixty (60) days of ADMINISTRATOR'S final decision. The arbitration will take place before a single arbitrator. . . . You agree that any arbitration proceeding or litigation will only consider YOUR Claims. Claims by, or on behalf of, other individuals will not be arbitrated or litigated in any proceeding that is considering YOUR claims. In the event of litigation involving this CONTRACT, venue shall be in the courts of

>Jefferson County, Colorado. Please refer to the "Individual State Variance Requirement" at the end of YOUR CONTRACT for any added requirements in YOUR state.

VSC, at 17.[5] Admittedly, the arbitration provision sounds as permissive, not mandatory. However, the applicable "Individual State Variance Requirement" for the State of Oklahoma provides:

>The Arbitration section is amended to include: While arbitration is mandatory, the outcome of any arbitration shall be non-binding on the parties, and either party shall, following arbitration, have the right to reject the arbitration award and bring suit in a district court.

VSC, at 21.

Here, Plaintiffs make four arguments for why arbitration cannot be compelled. None is persuasive.[6]

First, Plaintiffs conclude the arbitration provision is unenforceable because the VSC is an insurance contract. Doc. 26 at 8–11. The Court disagrees with the premise. The VSC is a service warranty contract, that specifically states it is "not an Insurance Contract." VSC at 21. Furthermore, the VSC is governed by the Service Warranty Act and is licensed as an Oklahoma Service Warranty Association. *Id.*

Second, Plaintiffs argue they "did not agree to delegate jurisdiction on the issue of arbitrability of its claims to an arbitrator," so therefore, the arbitration agreement is not valid. Doc. 26, at 13. The Court fails to see the necessity of such argument here because no one seeks to delegate questions of arbitrability to an arbitrator and neither does the VSC require such delegation. It is true that the Court should address the dispute of "whether a party has agreed that

---

[5] The "Administrator" is defined in the VSC as "American Auto Shield, LLC, the party obligated under this CONTRACT." VSC, at 5.

[6] Plaintiffs' request the Court hold an evidentiary hearing "on the issue of whether a valid arbitration agreement exists and, if so, whether it applies to the Plaintiffs' claims." Doc. 26, at 4, 8. The Court, in its discretion, declines Plaintiffs' request because, for the reasons explained throughout the opinion, the record establishes that a valid arbitration agreement exists and applies to all of Plaintiffs' claims. *See Hancock. American Tel. and Tel. Co., Inc.*, 701 F.3d 1248, 1266 (10th Cir. 2012) (concluding the district court did not abuse its discretion in denying an evidentiary hearing); *see also Harris v. David Stanley Chevrolet, Inc.*, 273 P.3d 877, 879 (Okla. 2012).

*arbitrators* should decide arbitrability" first. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017). And that "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* (internal quotation marks omitted). Here, there is no indication in the VSC or the above arbitration provision that the parties clearly and unmistakably intended for an arbitrator to decide questions of arbitrability. Nor do the Defendants argue anything on this issue. Therefore, it is proper for the Court decide whether the dispute is arbitrable. *Id.* at 1280–81; *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

Third, Plaintiffs' make many arguments as to the unenforceability of the arbitration provision including their lack of signatures, the provision being permissive not mandatory, it's unconscionable, and is the product of misrepresentation. *See* Doc. 26, at 13–23. Nearly identical arguments were made in an identical case dealing with the same contract. In *Wohlford v. American Auto Shield, LLC*, the plaintiff purchased the same exact VSC from defendants and filed a claim pursuant to the VSC for vehicle repair costs, which was denied. 2023 WL 1107891, at *1 (W.D. Okla. Jan. 30, 2023). Like here, defendants moved to compel arbitration, contending the VSC is binding, mandatory, and arbitration applies to all of plaintiff's claims. *Id.* Plaintiff countered that he did not sign the VSC, did not knowingly or with complete information agree to arbitration, and the arbitration provision is permissive, not mandatory. *Id.* at *3. Importantly, that plaintiff conceded to making payments under the VSC and even sought to enforce the contract against defendants. *Id.* at *4.

The *Wohlford* Court rejected plaintiff's arguments. First, the court concluded that "although Plaintiff did not physically sign the VSC, 'Oklahoma law does not require such formalistic execution of a contract.'" *Id.* at *5 (quoting *Born v. Progrexion Teleservices, Inc.*, 2020

9

WL 4674236 (D. Utah Aug. 11, 2020)). The court identified that under the FAA and OUAA, "neither Act requires arbitration agreements to be signed [and] acceptance of an arbitration agreement may be shown by acts, conduct, or acquiescence to the terms of the contract." *Id.* (quoting *Born*, 2020 WL at *11). Second, the court pointed out that the plaintiff "does not dispute the *existence* of an arbitration agreement." *Id.* In fact, the plaintiff "accepted the terms of the VSC, including its arbitration provisions," and "acquiesced to its terms by making payments under the VSC, not cancelling the VSC and by submitting a repair claim under the VSC." *Id.* Thus, plaintiff "acknowledge[d] and relie[d] upon the very agreement that contains the arbitration clause he seeks to disclaim." *Id.* Third, the court rejected plaintiff's argument that there was no clear evidence of intent to arbitrate because the plaintiff plainly acquiesced to the VSC's terms through conduct. *Id.* Fourth, plaintiff argued that he accepted the oral representations made by defendant and its advertisements and asserted that arbitration was never explained to him. *Id.* at *6. Again, the court rejected this argument as grounds of rendering the arbitration clause unenforceable because plaintiff failed to demonstrate any duty to speak about the specific arbitration provisions. *Id.*

Overall, the *Wohlford* Court concluded that "the arbitration provisions of the VSC are enforceable and Plaintiff's claims against Defendants are subject to arbitration." *Id.* It summed up that,

> Plaintiff's overriding argument, that he did not physically sign the VSC, is not grounds upon which to preclude enforcement of the arbitration provisions. The record shows Plaintiff knew, or should have known, of all terms of the VSC, including the arbitration provisions, and he is contractually bound by those terms. Finally, Plaintiff has not disputed that the claims against the non-signatory Defendants are inextricably intertwined and, therefore, subject to arbitration.

*Id.*

Here, the record shows—exactly like in *Wohlford*—that Plaintiffs' conduct demonstrates acquiescence to the terms of the contract, including the arbitration provision. Plaintiffs discussed

10

the VSC, authorized an agent to sign the VSC, received the VSC via email, called again to discuss the VSC, made payments under the VSC, filed a claim pursuant to the VSC, and now seeks to enforce that very same contract against Defendants. Plaintiffs make many of the same arguments as the *Wohlford* plaintiff, including the lack of signature issue (Doc. 26, at 13–14), the lack of an explanation of the arbitration provision (Doc. 26, at 22–24), and the lack of intent to arbitrate (*generally*, Doc. 26, at 13–24). The Court finds *Wohlford* persuasive and therefore, to the extent Plaintiffs' arguments are grounded in the same, the Court rejects them and finds the arbitration provision in the VSC valid and enforceable.

However, Plaintiffs raise a couple arguments not made in *Wohlford*. First, Plaintiffs argue that "Defendants failed to demand arbitration in writing within sixty (60) days *of the denial of Plaintiff's claim*, in contravention of the requirement for initiating arbitration under the contract." Doc. 26, at 11 (emphasis added). At the outset, Plaintiffs misstate the arbitration provision. Recall that § M states,

> Any legal dispute between YOU and ADMINISTRATOR relating to this CONTRACT may be resolved by arbitration. To begin arbitration, either YOU or WE must make a written demand for arbitration within sixty (60) days *of ADMINISTRATOR'S final decision*.

VSC, at 17 (emphasis added). The VSC explicitly states it is the Administrator's final decision that begins the sixty-day clock, not the denial of a plaintiff's claim. Concededly, what "final decision" means is not clear from the text. It could mean sixty-days from the denial of plaintiff's claim, as the Plaintiffs contend. Or it could mean sixty-days from a plaintiff's filing of a complaint (or service on defendant). For the reasons that follow, it does not matter so much what the "final decision" specifically relates to because § M's sixty-day timeline does not apply here.

Under Oklahoma law, "a contract is to be viewed as a whole so as to give effect to every part of the contract and enable each clause to help interpret the others." *Wohlford*, 2023 WL, at *6

(citing Okla. Stat. tit. 15, § 157). Recall that § M's arbitration provision is amended by the Oklahoma Variance, which states "*While arbitration is mandatory*, the outcome of any arbitration shall be non-binding on the parties, and either party shall, following arbitration, have the right to reject the arbitration award and bring suit in district court." VSC, at 21 (emphasis added). Read in conjunction with § M, it is clear that the Oklahoma Variance makes the permissive § M not so permissive, but mandatory. It is also reasonable that, given the permissive nature of § M, the sixty-day timeline is in place to procedurally put a deadline on either party's decision of whether to demand arbitration, or not. In other words, the purpose of the sixty-day timeline is intertwined with the permissive nature of § M. The Oklahoma Variance which amends § M to make arbitration *mandatory* therefore eliminates the entire purpose of the sixty-day timeline. Overall, when § M is read in conjunction with the Oklahoma Variance which makes arbitration mandatory, the sixty-day-decision timeline is inapplicable because there is no decision to be made. Arbitration is mandatory for any legal dispute relating to the VSC. This conclusion is bolstered given the liberal policy—both federal and Oklahoma—favoring arbitration. Therefore, the Court rejects Plaintiffs timeliness arguments predicated on § M's sixty-day window.

Second, Plaintiffs argue that Defendants have waived their right to arbitrate. Doc. 26 at 24. They argue waiver exists because Defendants filed an answer and motion to dismiss in state court, "scheduled the [motion to dismiss] for hearing," and "waited more than *two years* after denial of Plaintiffs' claim" under the VSC. *Id.* at 24–25. Plaintiffs cite no authority on this issue. The Tenth Circuit's leading opinion on this topic is *Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colorado*, 614 F.2d 698 (10th Cir. 1980). In determining whether a party has waived its right to arbitration, the Court examines several factors:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties

12

> "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*Peterson v. Shearson/American Exp., Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988) (quoting *Reid Burton Constr., Inc.*, 614 F.2d at 702)).[7] These factors "are not exclusive and do not require a mechanical process," but rather they reflect principles that should guide the court. *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 773 (10th Cir. 2010).

First, Defendants actions are not inconsistent with the right to arbitrate. The state petition was filed on December 10, 2021 (Doc. 2-1) and because of state and federal procedural rules, Defendants filed a limited answer and a motion to dismiss, before removing the case to federal court, on January 19, 2022 (Doc. 2).[8] Further, it was not more than two years that Defendants waited to compel arbitration after it denied Plaintiffs' claim. The denial of coverage was in November 2020 (Doc. 25, Ex. 5) and Defendants moved to compel arbitration in September 2022 (Doc. 25). Although *almost* two years, Defendants filings in state court and its removal are attributable more to procedural rules rather than purposeful delays in compelling arbitration. Second, and similarly, the "litigation machinery" has not been substantially invoked. At this time, there is only one pending motion to dismiss, no joint status reports have been filed, and no scheduling order entered. For the most part, this case has consisted of resolving preliminary

---

[7] In *Morgan v. Sundance, Inc.*, the Supreme Court rejected the invocation of a "'strong federal policy favoring arbitration' in support of an arbitration-specific waiver rule demanding a showing of prejudice." 596 U.S. 411, 416 (2022).

[8] The Court explained in its Memorandum Opinion and Order Denying Plaintiffs' Motion to Remand (Doc. 39) the procedural history of this case, specifically that Defendants *did not* set the motion to dismiss hearing, the state court set it *sua sponte*. Doc. 39, at 2, 6. In Plaintiffs' current motion, they state this fact (though elsewhere saying the opposite). *See* Doc. 26, at 5 ("On January 14, 2022 Tulsa County District Judge . . . *set* Defendants' motion for hearing on February 15, 2022 . . . .").

matters such as removal and the instant arbitration issue. Third, Defendants are not requesting arbitration close to any trial date (none is set) and for the reasons above, have not delayed long before seeking a stay. Fourth, Defendants have not filed any counterclaims and are seeking a stay if the arbitration is compelled. Fifth, no important intervening steps have occurred (such as taking advantage of judicial discovery procedures), especially since no scheduling order has been entered. Lastly, the delay has not affected, misled, or prejudiced the opposing party, which the Court need not find. *See supra* n.7. The case is still very much in its initial stages, as the Court just resolved the removal issue, and no discovery has commenced in this action. Importantly, there is no indication that Defendants, now seeking arbitration, are improperly manipulating the judicial process. *Hill*, 603 F.3d at 773.

The *Peterson* factors support the conclusion that Defendants have not waived their right to arbitration. Together with "the circumstances of this case, particularly in light of the federal policy favoring arbitration," the Court is convinced that Defendants have not waived their right to arbitration. *Id.* at 776.

The Court concludes that the VSC's arbitration clause is enforceable, and it mandates arbitration for "[a]ny legal dispute between [the parties] relating to" the VSC. VSC, at 17. Here, all of Plaintiffs' claims relate to the contract. *See* Doc. 2-1. Thus, Plaintiffs' claims against Defendants are subject to arbitration. Plaintiffs seek to disclaim the very contract they want to enforce against Defendants. The record shows Plaintiffs knew, or should have known, of all the terms of the VSC, including the arbitration provisions, and they are contractually bound by those terms. The inquiry now proceeds to whether the case should be stayed pending arbitration or dismissed.

**III. Stay or Dismissal**

Defendants request the Court to enter an order staying the proceedings while the matter is arbitrated. Doc. 25, at 7. It is true that the Tenth Circuit has held that "when a party moves to stay an action pending compulsory arbitration, 'the proper course' is 'for the district court to grant the motion and stay the action pending arbitration.'" *Dreamstyle Remodeling, Inc. v. Renewal by Andersen, LLC*, 2023 WL 246842, at *8 (D.N.M. Jan. 18, 2023) (quoting *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994)). Indeed, the FAA states that where a suit is referable to arbitration under an agreement in writing, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had" pursuant to the agreement. 9 U.S.C. § 3. However, as the District of Colorado points out, "[d]espite the seemingly mandatory language of section 3, the majority of federal courts hold that a district court may dismiss rather than stay a complaint when all claims therein are arbitrable." *Alarape v. Group 1 Automotive, Inc.*, 2006 WL 2990212, at *3 n.2 (D. Colo. Oct. 19, 2006) (collecting cases). In *Alarape*, the defendants did not request dismissal, either principally or in the alternative, so the court was "foreclosed by *Adair* from doing [anything] other than staying" the action. *Id.* (citing *Adair*, 25 F.3d at 954–55) (where appellate jurisdiction of order compelling arbitration was found lacking because defendant had requested a stay, not dismissal).

Here, in Defendants' instant motion to compel, they seek a stay of the proceedings and not expressly an order of dismissal. Despite this, and for the reasons that follow, the Court will dismiss the action without prejudice. First, currently pending before the Court is a motion to dismiss filed by Defendants. *See* Doc. 9. This motion seeks dismissal of all of Plaintiffs' claims, which all revolve around the VSC and are all subject to arbitration. Second, the Court is concerned that if the matter is stayed, and is then reopened after the arbitration, venue would be improper in the

15

Northern District of Oklahoma. This is because the VSC has a mandatory forum-selection clause: "In the event of litigation involving this CONTRACT, venue shall be in the courts of Jefferson County, Colorado." VSC, at 17; *see Harris v. American Auto Shield, LLC*, 2023 WL 2700738 (W.D. Okla. March 29, 2023) (the Western District of Oklahoma granting a motion to dismiss on *forum non conveniens* grounds for the exact same mandatory forum-selection clause in the exact same VSC). Therefore, the Court will dismiss this case without prejudice. As expressly provided by the contract, the parties may, if they wish, re-file the action in a proper forum after arbitration. VSC, at 21.

## CONCLUSION

The Supreme Court has "long recognized and enforced a liberal federal policy favoring arbitration agreements." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks omitted). Both federal law and Oklahoma law codify this view, and the parties' contract implements it.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Arbitration (Doc. 25) is **GRANTED**. However, rather than stay the proceedings pending the completion of arbitration, **IT IS FURTHER ORDERED** that this matter is **DISMISSED WITHOUT PREJUDICE**.

_____
UNITED STATES DISTRICT JUDGE